Snyder *v.* Stafford.

---

## SNYDER *vs.* STAFFORD and others.

Where a master, to whom was committed the execution of a decree of sale of mortgaged premises in the usual form, was the nephew of the wife of the surety of the assignee of the decree, for the payment of the purchase money agreed to be paid for the assignment of the decree, and also for the assignee's indemnifying the complainant against any trouble and costs to which he might be subjected in consequence of such assignment, by a junior judgment creditor of the mortgagor, who had previously entered into a negotiation for the purchase of the decree; and where there were conflicting claims to the surplus arising from the sale of the mortgaged premises; *Held*, that the master was not incompetent to act as such, on account of his connection by affinity with such surety; the surety not being a party to the suit, nor a party in interest in the sale of the mortgaged premises, or in the proceeds of the sale; and the duties of the master under the decree not being judicial, but ministerial only.

The usual decree of foreclosure and sale of mortgaged premises, does not give the master who executes it any judicial powers, so as to bring the case within the equity of the provision of the revised statutes, which declares that no judge of any court can sit as such in any cause in which he would be excluded from being a juror by reason of consanguinity or affinity to either of the parties.

Where the decree directs the master to inquire and ascertain in what order the different parcels of the mortgaged premises should be sold under the decree, in order to protect the equitable rights of the several persons claiming to have interests therein, or liens on the respective parcels, the master, in determining this question, acts quasi a judge of the court.

The owner of a decree, for the sale of mortgaged premises, has no right to control the action of the master in relation to the order of the sale of the different parcels of such mortgaged premises.

Where there are conflicting claims of junior judgment creditors, to the surplus arising from the sale of mortgaged premises, such creditors should apply to the court, previous to the sale under the decree, for directions that the premises may be sold in such manner as will enable them to settle their respective rights upon the reference as to the surplus proceeds of such premises.

Where mortgaged premises have been sold at a sheriff's sale, under a judgment junior to the mortgage, and where the time for redemption has not expired, the general lien of the judgment is turned into a specific lien upon the premises, to the extent of the amount of the bid at the sheriff's sale and of the interest thereon.

Snyder v. Stafford.

Claims upon surplus moneys arising from the sale of mortgaged premises, must be settled upon the usual order of reference, after such moneys have been brought into court; in order to enable judgment creditors and others to file their claims, to the same, as prescribed by the rules of the court.

THIS was an appeal by John E. Taylor and James P. Cramer, from an order of the vice chancellor of the fourth circuit, made in this cause upon the application of the respondent Amos Stafford, setting aside a master's sale. The bill was filed on the 20th of March, 1843, to foreclose a mortgage given by R. Stafford, to the complainant J. Snyder, in September, 1842, upon a farm of 64 acres in the town of Saratoga, and upon a village lot in Schuylerville, to secure the payment of $1641 and interest; which mortgage was given for the purchase money of the farm. The mortgagor and his wife, and two or three other persons who were supposed to have some interest in the mortgaged premises as subsequent purchasers or otherwise, were made defendants. On the 12th of September, 1843, the usual decree of foreclosure and sale of the whole mortgaged premises, in parcels, or of so much thereof as should be necessary to pay the amount of the mortgage, being $1736, with interest and costs, was made and entered; but the village lot was directed to be sold subject to the contingent right of dower of the wife of the mortgagor therein. The surplus money, if any, the master was directed to bring into court to abide its further order. But as none of the judgment creditors of the mortgagor were made parties to the suit, and as their several claims, as hereafter stated, were not known to the court at the time of making the decree, no special directions were given to the master as to the order in which the mortgaged premises should be sold.

In February, 1843, R. Stafford, the mortgagor, confessed a judgment to his mother for about $1400; which judgment she shortly afterwards assigned to the respondent A. Stafford. On the 20th of April, in the same year, and subsequent to the commencement of this suit, the respondent caused the mortgaged premises to be sold by the sheriff, by virtue of an execution on that judgment; and he became himself the purchaser of the village lot at such sale, for the sum of $325, and of the farm for the

sum of $350.   In March, 1843, Haight and Gillespie recovered a judgment against the mortgagor for about $150.   And another judgment was recovered against him upon a note, for about $200, in the same month ; upon which note the appellant J. P. Cramer and his copartner were endorsers.   Both of those judgments were liens upon the mortgaged premises at the time of the commencement of this suit, and at the time of the sheriff's sale ; and the last judgment was subsequently assigned to J. P. Cramer and his copartner, who had been obliged to pay the note as endorsers.   Shortly after the sheriff's sale, R. Stafford conveyed all his right and interest in the equity of redemption of the mortgaged premises to his brother, the respondent ; who thereupon took possession thereof and contracted with E. Purdy for a sale of the village lot to him.   J. P. Cramer insisted that this assignment of the equity of redemption was for the purpose of defrauding him and his copartner, and of preventing them from redeeming the premises from the sheriff's sale, upon another judgment, of about $500, which they shortly afterwards recovered against Rensselaer Stafford.

In July, 1843, the respondent A. Stafford entered into a negotiation with the complainant for the purchase of his interest in the mortgage, but in such a manner that the proceedings in the foreclosure suit might be continued in the name of the latter ; the complainant to have the control of the suit and proceedings until the amount of the mortgage money was paid, or secured to his satisfaction.   In pursuance of such arrangement, A. Stafford advanced to the complainant, at different times, previous to the 29th of September, 1843, the sum of $900. On the last mentioned day the complainant, without the knowledge or consent of A. Stafford, sold and assigned the whole decree in this suit to J. P. Cramer.   And Conrad Cramer became the surety for J. P. Cramer, to the complainant, for the payment of the purchase money for such decree, at a future time, and that he would indemnify the complainant against any trouble and costs to which he might be put by A. Stafford in consequence of such sale and assignment of the decree.

The mortgaged premises were advertised for sale under the

decree, for the 4th of November, 1843, by master Porter, who was a nephew of the wife of Conrad Cramer. When the master announced, on the day of sale, that he would put up and sell the village lot first, the counsel for the respondent objected, and requested the master to sell the farm in the first place. But upon the production of affidavits of J. P. Cramer and E. F. Bullard, showing the interest of the former in the decree, under the assignment, and his lien upon the premises by virtue of his judgment, and that he believed the judgment of the respondent and also the conveyance of the equity of redemption were fraudulent as against him, and that neither of the parcels of the premises would sell for sufficient to pay the whole amount of the mortgage, if the $900 was not considered as a payment thereon, and that the village lot would sell for the greatest amount in proportion to its value, the master decided to put up that lot first. It was put up accordingly. And the terms of sale were for cash, and that unless the money was paid down the premises would be put up again and resold. And the respondent became the purchaser for the price of $1200. And the master thereupon filled up a deed for the lot and tendered it to the purchaser, before proceeding to the sale of the other lot; and J. P. Cramer consented to allow the $900 advanced by A. Stafford to the complainant in part payment of the $1200. The respondent, however, refused to complete his purchase, until he could see the result of the sale of the residue of the premises; unless the master would also deduct from the amount of the purchase money the $325 for which the village lot had been struck off at the sheriff's sale. This the master declined doing, and decided that he would put up the lot for sale a second time, after waiting about an hour. The respondent thereupon applied for an adjournment of the sale, but the master thought it was his duty to proceed to a resale of this lot at that time. He consented, however, to adjourn the sale of the farm till a future day. The village lot was accordingly put up again, and was sold to the appellants, for the sum of $910; and the sale of the farm was adjourned.

The respondent thereupon applied to the vice chancellor to set aside the sale of the village lot, or for such other order as

should be just; insisting, among other things, that the master was disqualified from making the sale, on account of his connection by affinity with Conrad Cramer, the surety for J. P. Cramer, the assignee of the decree. The ʾvice chancellor decided that the sale was unauthorized, on that ground, and set it aside. He also directed that, upon R. Stafford's paying the amount due on the decree, within thirty days, after deducting therefrom the $900 advanced by him to the complainant, with interest from the time the advances were made, all further proceedings by the complainant upon the decree should be stayed; and that A. Stafford be at liberty, at any time thereafter, to apply for an order to sell the mortgaged premises to reimburse the amount paid by him on the decree.

*E. F. Bullard & M. T. Reynolds*, for the appellants.

*Judiah Ellsworth*, for the respondent.

THE CHANCELLOR. I think the vice chancellor erred in this case, in supposing that the master who made the sale was incompetent to act on account of his connection by affinity with Conrad Cramer. In the first place, C. Cramer was not a party to the suit, nor was he a party in interest in the sale of the mortgaged premises, or in the proceeds of the sale. He had indeed become security for J. P. Cramer for the payment, to the complainant, of the amount of the purchase money agreed to be paid upon the assignment of the decree. He was also security, that J. P. Cramer would indemnify the assignor against trouble and costs to which he might be put by A. Stafford, on account of that assignment. But I am not able to perceive how his liability as such surety gave him any interest whatever in the performance of the duties of the master upon the sale, any more than if he had become an endorser upon a note to the bank, to enable the drawer thereof to raise money to purchase this decree.

Again; there was nothing in the directions of the decree, under which the sale was to be made, giving to the master any judicial powers whatever, so as to bring the case within the

equity of the provision of the revised statutes, which declares that no judge of any court can sit as such in any cause in which he would be excluded from being a juror by reason of consanguinity or affinity to either of the parties. (2 *R. S.* 275, § 2.) Had the decree contained a provision that the master should inquire and ascertain in what order the different parcels of the mortgaged premises should be sold under the decree, in order to protect the equitable rights of the several persons claiming to have interests therein, or liens on the respective parcels, the master, in determining that question, would have been quasi a judge of this court. But in making the sale under the decree, in this cause, as the decree was made and entered, he was performing a ministerial act, in the same manner as a sheriff who had an execution against two lots of land would act ministerially in determining which lot he would sell first.

The mistake which both parties fell into in this case was in supposing the proper time. to settle their conflicting claims to the surplus of the mortgaged premises, after paying the amount of the decree, was at the sale; and without any previous order of the court in relation to the subject. And both also appear to have fallen into the very common error of supposing that the owner of the decree had the right to control the action of the master, and to direct which parcel should be sold first. Hence the contest between A. Stafford and J. P. Cramer to become the assignees of this decree; instead of applying to the court, as judgment creditors of the mortgagor having liens upon the premises subsequent to the mortgage, for the proper directions, that the premises be sold in such a manner as to enable them to settle their respective rights upon the reference as to the surplus proceeds of the mortgaged premises. Here the situation of the several liens subsequent to the mortgage was such that the rights of the owners of those several liens could not have been protected by selling either parcel of the mortgaged premises first, and applying the whole proceeds of that parcel towards the mortgage debt; even if the validity of A. Stafford's judgment, and of his subsequent conveyance from the mortgagor, had not been disputed. For by the sheriff's sale the general lien of the

judgment upon the whole of the mortgaged premises was turned into two specific liens, upon the farm and the village lot respectively; to the extent of the amount bid at the sheriff's sale upon each, and the interest thereon. And as these specific liens were both created at the same time, the proper way to protect the holder thereof, and to give the owners of the two junior judgments, recovered in March, 1843, the benefit of those general liens, as well as the right to contest the validity of A. Stafford's judgment, under which he claimed the two specific liens, was to direct the farm and village lot both to be sold, separately; even if one of them was sufficient to pay the amount of the decree; and that the master should pay such decree, and the costs, rateably out of the proceeds of each parcel, and bring the residue into court, specifying in his report the surplus proceeds of each parcel. The amount of the specific liens, created by the sheriff's sale, upon the farm and village lot respectively, if valid, would then be entitled to a preference in payment out of the surplus proceeds of the parcel of the premises upon which such liens existed at the time of the master's sale; in the same manner as if R. Stafford had given to his brother separate mortgages upon the farm and village lot respectively, for the same amounts, on the day of the docketing of the judgment under which these specific liens were acquired. And the two judgments recovered before the conveyance of the equity of redemption by R. Stafford to his brother, and which were general liens upon the residue of the surplus proceeds of both parcels of the mortgaged premises, would then be entitled to payment out of such proceeds, according to their legal priorities in reference to each other. If any thing remained, it would belong to A. Stafford as the grantee of the equity of redemption which was conveyed to him subsequent to the sheriff's sale; unless the owners of the junior judgment of $500, which was subsequently recovered, should succeed in showing the conveyance fraudulent as against them.

The several claims upon the surplus moneys, after paying the amount of the decree and costs out of the proceeds of the farm and village lot rateably, would of course have to be settled upon

the usual order of reference, after such surplus moneys had been brought into court; in order to enable all judgment creditors and others to file their claims to the same, as prescribed by the rules of the court. And upon such reference, the validity of the judgment under which A. Stafford claims the specific liens upon the surplus proceeds of the farm and village lot respectively, and the validity of the sale of the equity of redemption in both parcels to him, would form proper subjects of inquiry and settlement.

Under this decree, which only authorized the master to sell so much of the mortgaged premises as might be necessary to pay the complainant's debt and costs, and which could be sold separately without injury, a special order of the court would have been necessary to enable him to sell both parcels, so as to protect the rights of the owners of the several subsequent incumbrances; if the value of either parcel was more than sufficient to satisfy the decree and the costs of sale. But as the value of each parcel of the mortgaged premises was evidently insufficient, the master of course must sell both to comply with the directions of the decree. And if both were sold, it was perfectly immaterial which parcel was sold first. For if the master paid more than a rateable proportion of the proceeds of either parcel towards the satisfaction of the complainant's debt and costs, the court would of course direct it to be refunded out of the proceeds of the sale of the other parcel, in settling the rights of the junior incumbrancers and claimants as between themselves. There was no error therefore in selling the village lot first; and I can see no sufficient excuse on the part of the respondent for refusing to complete his purchase. And if the master erred at all, it was in not refusing to adjourn the sale of either parcel, upon the application of the respondent.

The affidavits show that the offer was made to the respondent to allow him to deduct the amount of his interest in the decree from the $1200 which he had bid for the village lot. And as the master had no power to decide upon the validity of the claim to the $325, as a specific lien upon the surplus proceeds of that lot, the refusal of the purchaser to complete his purchase unless the $325 was deducted was unreasonable and improper. Nor was

such purchaser authorized to wait and see what speculation he could make upon the sale of the other lot, before he decided whether he would comply with the terms upon which the village lot had been struck off to him. The master was therefore right in putting up the village lot again, and reselling it to the highest bidders who were willing to comply with the terms of the sale. The appellants were accordingly entitled to the benefit of their purchase; and the order setting aside the sale to them was erroneous. The order was also erroneous in granting an indefinite stay of the sale of the residue of the mortgaged premises.. For it deprives the junior judgment creditors of the power to litigate their claims to the surplus proceeds of the mortgaged premises, upon the usual order of reference; and leaves the whole decree standing in full force against both portions of the mortgaged premises. Under this order no one could with safety redeem either parcel of the premises ·from the sheriff's sale; as the expense of the further litigation which would necessarily arise in adjusting the claims upon each parcel, under the decree, would deter any prudent man from redeeming.

The order appealed from must therefore be reversed, and the motion to set aside the sale of the village lot must be denied, with $15 costs; and the purchasers of that lot are to be entitled to the rents and profits thereof which have accrued subsequent to the purchase. But to protect the rights of all parties, the master must be directed to proceed to the sale of the farm, upon a notice of three weeks. And he must pay, out of the proceeds of the sale of both parcels rateably; first, the costs of the foreclosure and the costs of the master, &c. upon both sales; next, to J. P. Cramer, as assignee of the decree, the amount which would have been due to the assignor, exclusive of the $900 advanced to him by A. Stafford; and thirdly, to A. Stafford as the equitable owner of the residue of the decree, the $900 and the interest thereon from the dates of the respective receipts given for such advances. He must also bring the residue of the money into court, and·specify the amount of the surplus proceeds of each parcel of the mortgaged premises separately. And this order is to be without prejudice to the rights of these parties,

or of any other persons claiming such surplus proceeds, or any part thereof, to give written notice of their claims to the master, or to the clerk of this court; and to have their rights to the same settled upon a reference, in the manner prescribed by the 136th rule of this court.

The object in directing a sale upon a three weeks' notice is to enable the master to complete the sale of both parcels before the expiration of the fifteen months allowed to redeem the premises from the sheriff's sale; in order to give the junior judgment creditors the same right to the surplus proceeds, without an actual redemption, as they would have had if the master had proceeded to sell the farm, in November last, instead of adjourning the sale of that part of the premises upon the application of the respondent's solicitor.

The novel questions arising in this case render it proper that I should leave the appellants to bear their own costs on this appeal. Neither party, therefore, is to have costs as against the other in this court.