# SUPREME COURT.

CHARLES KING and others agt. JAMES SELBY WEST & WIFE, and others.

On *reference* in *foreclosure* suits under rule 48, the *liens* referred to in the rule are those which subject the estate to be sold under execution, without any further intervention of the court.   Claims, however *equitable*, which are not matured into liens, under which the property can be charged in execution, and sold without further adjudication, cannot be taken into consideration by the referee.

*New-York Special Term, May,* 1854.

THIS was a reference to ascertain the liens and their priorities upon the surplus moneys arising in a foreclosure case. Abner L. Ely, the petitioner, claimed the surplus moneys as

as owner in fee of the property, he having bought it pending the foreclosure; and having bid it in at the sale under the foreclosure. He produced a deed from James Selby West, and Elizabeth his wife, two of the defendants, to him, bearing date Dec. 17, 1853, pending the foreclosure; also a deed under which Mrs. West took the title of the premises to herself, from Edward J. King and wife to Elizabeth West, dated Dec. 27, 1852. Both deeds were duly recorded.

Isaac Newton and Mahlon Buckman, judgment creditors of James Selby West, objected to the latter deed, as not proving ownership in Mrs. West. And proposed to prove this state of facts.

1. Mrs. West was married before the statute of 1848. Her father was then living. She had not received any separate estate within that statute.

2. This property was bought at auction, Dec. 8, 1852, by her husband; and the 10 per cent. paid by him, and the conveyance was made to her, though the consideration was paid by her husband.

3. That it was subject, in equity, to the payment of any judgment against him.

Testimony was taken before the referee, Benjamin D. Silliman, Esq., who reported, on May 6, 1854, that the surplus money ($494.26) belonged to Abner L. Ely, the petitioner, he having a lien thereon to the whole amount thereof; and that the judgment creditors, Newton and Buckman, and one Donadi, had not any lien thereon.

During the hearing before the referee, James Selby West was examined as a witness on behalf of the judgment creditors. After quite a lengthy examination, in reference to the separate property of Mrs. West, the wife of the witness, the indignation of the witness seems to have been very much aroused by a question which the counsel had put to him, and which he refused to answer.

The counsel then asked the witness—" Will you now state from what source Mrs. West derived the money with which you purchased the lots in question?"

King and others agt. West & Wife and others.

[This question had once or twice before been put to the witness, and he declined answering it.]

*Answer.* " I will answer no questions; but put myself under the protection of the court."

The referee stated to witness, that witness was bound to answer the question, but that referee had not power to compel an answer.

An order was then procured, requiring James Selby West to appear at a special term of this court, to be held at the City Hall of the city of New York, on Tuesday the 25th of April, 1854, at 11 o'clock, and show cause why he should not appear before the referee, and submit to an examination touching the matters in the said order of reference; and particularly why he should not make answer to the several interrogatories addressed to him on behalf of Isaac Newton and Mahlon Buckman, judgment creditors of said West; and such other questions as should be addressed to him touching the separate estate of his wife, and the sources from which the same was derived; or, in default thereof, why an attachment should not be issued against him for his contempt, &c.

J. S. CARPENTIER, *for judgment creditors.*
ELIAS H. ELY, *for Abner L. Ely.*

CLERKE, Justice.   The creditors of West have, undoubtedly, a right to investigate the good faith of the purchase of the property in question, made in the name of his wife; and it matters not whether they are antecedent or subsequent creditors. (*Mead* agt. *Gregg*, 12 *Bar. S. C. R.* 653.)   Nor do the sections of the statute relating to trusts limit or restrict their right in this respect.   By recollecting the evils which this statute was designed to remedy, it will be readily seen that those sections are intended to prevent secret resulting trusts; giving to those who were *at the time* creditors of the party, the privilege of a *presumption* in their favor that the transaction was fraudulent; but by no means excluding subsequent

creditors from the right to inquire, by competent testimony, into the validity of the transaction.

But can this investigation be made under an order of reference, to ascertain the claims to surplus money pursuant to the present 48th rule of this court? I think not. The liens referred to in that rule are those which subject the estate to be sold under execution, without any further intervention of the court. Claims, however equitable, which are not matured into liens, under which the property can be charged in execution, and sold without further adjudication, cannot be taken into consideration by the referee, under an order of this nature. Therefore questions, however pertinent under other proceedings, would be useless under the present; because, whatever may be the answers to them, the referee could in no way make them applicable to the particular report which he is authorized to make.

I, therefore, dismiss the order to show cause, without prejudice to the judgment creditors of West to take any other course which they may be advised to pursue.