## HUSTED *a.* DAKIN.

*Supreme Court, Third District; Special Term, Aug.,* 1857. *Again at General Term, October,* 1857.

EXECUTION.—SALE OF REAL ESTATE.—ADVERTISEMENT.—REFEREE.—SURPLUS MONEYS.—LIENS BY JUDGMENT.—IRREGULARITY.—FRAUD.—SHERIFF.—STATUTORY POWER.

By a sale of land on a judgment, the lien of the judgment, and the right to redeem under it, are extinguished.

In like manner, any claim upon surplus moneys arising upon the foreclosure of a prior mortgage is extinguished by such a sale.

A judgment-debtor whose land has been sold on execution, subject to an antecedent mortgage, and whose equity of redemption has been subsequently foreclosed and sold, has no right to redeem under the statute, as a judgment-debtor whose real property has been sold on execution.

---

On a reference as to surplus moneys, under Rule 48, the referee can take into account only absolute liens, as distinguished from equitable claims, not matured into liens.

On a reference as to surplus moneys, under Rule 48, the referee, when he finds a lien regular and valid upon the record, has no right to go behind it to inquire whether it is irregular, fraudulent, or inequitable.

Nor when the referee has made his report, can the justice or regularity of the liens be examined upon the evidence taken before the referee.

The court will not allow such liens to be impeached collaterally, but only upon applications made directly for that purpose on a sufficient notice, in which the defects, irregularities, or frauds are specifically pointed out.

To sell together, on execution, land consisting of distinct parcels, is an irregularity merely.

On a reference to ascertain the claims to surplus moneys, objections cannot be raised to the regularity of proceedings in suits separate and distinct from that in which the reference was had, or to the good faith of the parties to those suits, or of the officers who were executing the process of the court therein.

A sale of real property on execution, advertised to be had under specified executions in the sheriff's hands, is not to be deemed a sale at the instance of a judgment-creditor, whose execution is delivered to the sheriff after the first publication of the advertisement, and is not specified, although the sale is postponed for more than six weeks after the reception of the junior execution, and such postponement is regularly advertised.

In selling property upon execution, the sheriff acts by virtue of a statutory authority which must be strictly pursued.

I. *August*, 1857.—Motion to confirm referee's report in regard to surplus moneys.

The foreclosure was instituted by Cornelius Husted, Silas Harris, Henry C. Myers, and George W. Barton, against Orville Dakin and others. There was a surplus of $11,918.62. The referee found and reported that the plaintiffs were entitled to the entire surplus, and that Fuller, Dayton & Co., E. & J. Willetts, and G. & H. S. Dakin, adverse claimants, were not entitled to any lien upon the surplus moneys.

It appeared that Fuller, Dayton & Co. recovered judgment in the Supreme Court, New York, against Orville Dakin, on the first of March, 1856, for $1,261.61, a transcript of which judgment was docketed in Dutchess county, on the 4th day of March, 1856. Wm. Edgar and Wm. E. Bird, recovered in the Supreme Court, New York, against Orville Dakin and Morgan L. Harris, three judgments, as follows: (1) one for $554.23, March, 13, 1856, transcript filed in Dutchess county same day; (2) one for $325.32, March 19, 1856, transcript filed in Dutchess county, March 20, 1856; (3) one for $494.87, April 16, 1856, transcript filed in Dutchess county April 17, 1856.

These three judgments were duly assigned to Edwin Willetts, the claimant herein, July 21, 1856.

Execution was issued on the Fuller, Dayton & Co. judgment on the 29th day of April, 1856: received by the sheriff of Dutchess county, May 6th, 1856.

On the 19th day of June, 1856, the sheriff advertised the real estate of the defendant—including the premises, in the sale of which, under foreclosure, the surplus moneys herein arose—for sale under the executions in his hands; to be sold on the 12th day of August, 1856.

Executions were issued on the three Bird judgments on the 23d day of July, 1856, and received by the sheriff of Dutchess county the same day; said executions being received by the sheriff after the notice of sale had been published, and no new notice thereof being made.

After numerous adjournments, the sheriff sold the said real estate on the '16th day of March, 1857, to the plaintiffs herein, for the sum of $200, and gave them a certificate therefor, said certificate reciting that said sale was made under said Fuller,

Dayton & Co. judgment, and the said three Bird judgments, with others; but not reciting it to be made under any of the judgments owned or claimed by the plaintiffs herein, though their executions were all in the sheriff's hands. And no note of their having been withdrawn was indorsed on said executions, or on the sheriff's book, in which is kept the register of the receipts of the executions, and what is done on them, and to which book all persons, inquiring at the sheriff's office, are referred for information in regard thereto.

The sheriff had previously announced that he would take no small bid for the property; even saying he would not receive a bid of $2,000.

At the alleged adjournment, made on the 24th day of December, 1856, neither the sheriff nor his deputy was present at the time and place of sale.

The plaintiffs claimed to have withdrawn their executions in the sheriff's hands before the sale,—part on the 20th of September, 1856, by letter, and part on the 9th of February, 1857, verbally, meeting the sheriff in his private office for that purpose. The executions remained in the sheriff's hands,—part of the time, at least, in the pigeon-hole with the active executions; and the alleged withdrawal was not noted on the executions, or in the sheriff's book.

Fuller, Dayton & Co. also claimed to have withdrawn their executions before the sale, on the 6th of March, 1856; their attorney testifying that he told the sheriff that he could not tell, till he saw his clients; but that, most likely, they would rely on the surplus moneys in the mortgage sale. That if no one was present, at the sheriff's sale, for Fuller, Dayton & Co., they would rely upon the surplus moneys.

The sheriff denied having any recollection of this having been said.

The same attorney also testified that the plaintiff's executions were tied up in a bundle. That the sheriff said that Eno, plaintiff's attorney, had tied them up a few days before, for some purpose—what, he did not know.

Of this the sheriff had no recollection.

A witness testified that, on the morning of the sale, the sheriff told him, " with regard to the real estate, he did not intend to sell, but meant to adjourn the sale."

This was denied by the sheriff.

The witness also testified that he heard, that day or the next, that the real estate was sold; and that he told persons, with whom he conversed that morning, that "the sale of the real estate was to be adjourned."

The real estate sold under the executions consisted of a farm of 350 acres, upon which were dwelling-houses and barns, making them susceptible of use as two or three separate farms; an ore-bed and a furnace, with several distinct and separate dwelling-houses, and lots around the same, which were all offered by the sheriff, and sold in one parcel.

On the 29th day of June, 1857, Orville Dakin, the defendant and person against whom the executions were issued, on which the alleged sheriff's sale was made and certificate given, tendered to the sheriff of Dutchess, the officer making said sale, the sum of $206, that being the amount bid, with ten per cent. interest thereon, said tender being made for the purpose of redeeming the said premises from the said sale and certificate.

On the 18th day of April, 1857, the ore-bed and furnace were sold, under foreclosure in this action, to the said plaintiff; from which sale arises the surplus moneys herein.

The referee excluded the judgments of Fuller, Dayton & Co., and the Bird judgments, owned by E. & J. Willetts, as not being liens on the surplus moneys, holding that all the rights, title, and interest acquired by said judgments were vested in the plaintiffs herein by virtue of the sheriff's sale and certificate.

The plaintiffs moved for the confirmation of the report.

*William S. Eno* and *John Thompson,* for the motion.

*Joseph F. Barnard,* opposed.

DAVIES, J.—The defendant, Dakin, being largely indebted, made and executed a mortgage to the plaintiff Husted and others, to foreclose, which this suit was instituted. Pending the foreclosure, and on the 16th of March, the sheriff of Dutchess, by virtue of executions issued on judgments against Dakin, as follows—

one filed March  4, 1856, for $1,261.61
"       April  16,   "     "       494.37
"       March 19,   "     "       335.32
"       March 13,   "     "       554,23

and other executions (except on the judgments by virtue of which the plaintiffs claim the surplus moneys in this cause), sold all the right, title, and interest of Dakin in the said mortgaged premises; and the plaintiffs became the purchasers for $200.

On the 18th of April, 1857, the mortgaged premises were sold by virtue of the decree in this cause, and the plaintiffs became the purchasers.

The plaintiffs claim the whole of said surplus moneys by virtue of judgments held by them docketed against Dakin, most of them anterior to those of the other claimants, but some of them subsequent.

The report of the referee must be confirmed. It is too well settled in this State to be any longer questioned, that by a sale of land on a judgment, the lien of the judgment and the right to redeem under it, are gone. (See Shepard *a.* O'Niel, 4 *Barb.*, 125; and cases there cited.)

Applying that rule to the present case, it is seen that the liens of the claimants upon the mortgaged premises are extinguished by the sale by the sheriff on execution; and having no lien on the mortgaged premises at the time of the sale, it follows that they could have no lien on the surplus moneys. This is apparent from the words of Rule 48. Any party to the suit, or any person not a party, who had a lien on the mortgaged premises at the time of the sale, either by judgment or decree, may come in and claim the surplus.

It would seem to be equally well settled that on a reference to compute and ascertain the claims to surplus moneys under this rule, the liens referred to are those which subject the estate to sale on execution; such liens, as, without any further intervention of the court, would enable the holder of the lien to make sale of the property on which it was a lien. (King *a.* West, 10 *How. Pr.*, 333.)

It seems to me clear, therefore, that the holders of the judgments, upon which the mortgaged premises had been sold, had no liens thereon which entitled them to a portion of these surplus moneys.

But it was contended, on the argument, that this sheriff's sale was null and void by reason of the offer of Dakin to redeem the premises from the sale, and the tender by him to the sheriff of the amount bid by the plaintiff's thereat.

In June last, after the plaintiffs had become the absolute owners of the property by reason of the purchase on the mortgage sale, and the delivery to them of the sheriff's deed on such sale, the defendant, Dakin, tendered to the sheriff the amount bid by plaintiffs on the sale, on the 16th of March, 1857.

The difficulty in regard to this redemption is, that at the time it was made the defendant Dakin had no right, title, or interest in the premises sought to be redeemed. The plaintiffs had succeeded to all his rights; they had, in fact, become the assignees, by virtue of the purchase and sale on the 18th of April, 1857. This offer to redeem was therefore of no more import or effect than that of any stranger; and it would not, I am sure, be contended, that an offer by such stranger to pay the bid on the sheriff's sale, and claim from the sheriff the transfer of the purchaser's rights, would entitle him thereto, or would devest that purchaser of rights thus acquired, and render the sale null and void.

It seems to me, that the offer of Dakin to devest those rights is equally ineffectual; and that such offer did not render this sale void, and thus revive the lien of the judgments by virtue of which it was made. An order will be entered confirming the report of the referee, with a stay of proceedings until the next general term of this court, in this district, provided the claimants shall within ten days appeal from this order, and give security for the payment of the costs, and all damages which the plaintiffs may sustain in consequence of such appeal.

---

II. *October*, 1857.—Appeal from this order confirming referee's report in regard to surplus moneys.

Fuller, Dayton & Co., and E. & J. Willets, severally appealed from the foregoing decision to the general term.

*Hawley & Glover* and *J. R. Martin*, for the appellants.—I. The sale and certificate "became null and void" by the redemption of the premises sold. 1. The defendant in the execu-

tions upon which the sheriff claims to have sold this property, is entitled to redeem it, within one year from the time of sale, by payment of the sum bid, with ten per cent. interest. (2 *Rev. Stat.*, 370, §§ 45, 46.) The subsequent sale under foreclosure, does not affect the defendant's right to redeem. The statute is absolute. The grantee acquiring title by sale under a mortgage, intended by the statute, is a mortgage made subsequent to the judgment, not before, as the mortgage was in this case. A grantee, before the judgment, would have no object in redeeming; and so of a mortgage before the judgment—the judgment-creditors would be cut off by foreclosure. Or, if not, it is not inconsistent that the right to redeem should be in both the judgment-debtor and the grantee, by deed or sale under a mortgage. The sale under foreclosure of a mortgage cannot affect in any way the rights of a mortgagor in the surplus moneys, which stand in place of the land. 2. Orville Dakin tendered to the officer making said sale, for the purpose of redeeming it, the sum of money bid on the sale, with ten per cent. interest, which is the same as payment on his part; and thereby " the sale of the premises so redeemed, and the certificate of sale," became "null and void." (2 *Rev. Stat.*, 371, § 49.) The sale and the certificate being "null and void," it is as though they had never been, and they cannot bar any rights that would have existed had that sale never been made, or that certificate never given. (Wood *a.* Colvin, 5 *Hill*, 228.) At any rate, the certificate of sale but gives the purchasers an inchoate right, subject to be defeated by the redemption of the premises by the debtor or other creditors; and until the time for such redemption has expired, and the purchasers have perfected their title by deed, they ought not to receive these surplus moneys. (Van Rensselaer *a.* Sheriff of Albany, 1 *Cow.*, 501; King *a.* West, 10 *How. Pr.*, 333.) The giving the purchasers the amount bid with interest, as reported by the referee, is, in fact, a redemption of the premises, and is inconsistent with the claim of all the surplus moneys on said certificate. (Phyfe *a.* Riley, 15 *Wend.*, 248, 253.)

II. The selling the farms, ore-bed, furnace, and the dwellings, and the lots around, constituting one parcel, was such a non-compliance with the statute as should render the sale, and the certificate, ineffectual and void. (2 *Rev. Stat.*, 369, § 38.)

III. The sheriff not being present at the time and place appointed for the sale, on the 24th day of December, the whole proceedings fell through, and any sale on the alleged adjournment was irregular and void.

IV. We contend that there are facts and circumstances in this case that show legal, if not actual, fraud in said sale. 1. The selling several parcels in one parcel is evidence of fraud. (Woods *a.* Monell, 1 *Johns. Ch.*, 502; Mohawk Bank *a.* Atwater, 2 *Paige*, 54, 61; Ames *a.* Lockwood, 13 *How. Pr.*, 555.) 2. Inadequacy of price shows fraud. (Groff *a.* Jones, 6 *Wend.*, 522; Howell *a.* Barker, 4 *Johns. Ch.*, 118; 1 *Story's Eq.*, §§ 246, 247.) 3. The concealment by the sheriff of the fact of the withdrawal of the Eno executions. (Tinker *a.* Irvin, 1 *How. Pr.*, 112.) 4. The sheriff's announcement that the sale would be adjourned, and his intimation that it would not take place, unless some of them were present. (Collier *a.* Whipple, 13 *Wend.*, 224; Ames *a.* Lockwood, 13 *How. Pr.*, 555.) 5. In forcing the sale when so few were present, and just before the sale of the same property on foreclosure, the sheriff did not exercise a proper discretion. It was his duty to have adjourned the sale, when he saw there must otherwise be a great sacrifice of the property. (McDonald *a.* Neilson, 2 *Cow.*, 139.)

V. As to the Fuller judgment, the direction given by their attorney was, in case of no one being present at the sheriff's sale, an abandonment of the proceedings on their execution, and a virtual withdrawal of it from the sheriff's hands.

VI. As to the executions on the Bird judgments, they were not received by the sheriff until the advertisement of the sale had been made; so that the sale could not have been made under those executions. (Mascraft *a.* Van Antwerp, 3 *Cow.*, 334; Brewster *a.* Cropsey, 4 *How. Pr.*, 220.) There was no notice of sale under these executions, as there was not the notice required by law. (Olcott *a.* Robinson, 20 *Barb.*, 148.) In selling property, the sheriff acts by virtue of a power. If the power does not exist, no title passes. (Carpenter *a.* Stilwell, 11 *N. Y.*, 61.)

*William S. Eno* and *John Thompson*, for the respondents.— I. The powers, duties, and decision of the referee, in this proceeding, are regulated exclusively by Rule 48; and by that rule

the referee is restricted to a limited inquiry, to wit, "to the ownership, priority, and amount due upon any lien presented before him." If any of the judgments against Dakin had been fraudulently obtained, or irregularly, they should have been set aside by motion to the court. So long as they are suffered to remain, they are liens. The same principle applies equally to the validity of the sheriff's certificate of sale. Under that certificate, the claimants, Husted & Co., have acquired a specific lien on the premises to the extent of their bid. (Snyder *a.* Stafford, 11 *Paige,* 71; Shepard *a.* O'Neil, 4 *Barb.*, 125.) If the referee had the power, and his decision was a judgment to execute, important titles might be upset without notice. The question of undue influence or mental imbecility might arise. Questions which the Code provides, expressly, shall be tried by a jury, are heard and determined by a referee. (See King *a.* West, 10 *How. Pr.*, 333.)

II. By a sale of land under a judgment, the lien of the judgment is extinguished, and the right to redeem gone. (2 *Wend.*, 298; 4 *Cow.*, 136; 5 *Hill*, 228; 1 *Den.*, 633; 1 *Hill*, 110; 2 *Den.*, 344; 10 *Paige*, 249; 7 *Cow.*, 21; 1 *Barb.*, 388; 4 *Ib.*, 126.)

III. The general lien of the judgment is turned into a specific lien upon the premises, to the extent of the amount of the bid at the sheriff's sale and the interest. This specific lien belongs to the purchaser under the judgment; and he is entitled to the surplus moneys to the extent of his specific lien, in preference to a junior judgment-creditor. (Snyder *a.* Stafford, 11 *Paige*, 71; Shepard *a.* O'Neil, 4 *Barb.*, 125.)

IV. The surplus moneys are to be brought into court and paid to defendant, or any person who may be entitled thereto, subject to the order of the court. (2 *Rev. Stat.*, 192, § 159.)

V. These liens by judgment, referred to in Rule 48, are those which subject the land to be sold under execution, without further order of the court. (King *a.* West, 10 *How. Pr.*, 333.)

VI. It therefore follows, that no person is entitled to surplus moneys except he be the owner of the premises, or had a lien upon the land at the time of the foreclosure sale, upon which it could have been sold. The original judgment-creditors and purchaser cannot both claim under the same judgment. The effect of the sale is to transfer all the right of the judgment-

creditor, and the general interest which he had in the land by virtue of his judgment, to the purchaser; who thereby, until redemption, owns absolutely the premises, to the exclusion of all except prior liens. (20 *Johns.*, 13; 2 *Wend.*, 510; 1 *Barb.*, 518; 4 *Ib.*, 126.) The plaintiffs occupy all these different relations: 1. Prior judgment-creditors; 2. Purchasers at sheriff's sale; 3. Junior judgment-creditors redeeming.

VII. This attempted redemption by Dakin, on the 29th of June, 1857, could not in any manner operate to the advantage of the judgment under which the premises were sold, by reviving the lien of their judgment.

S. B. STRONG, P. J.—The sale of the land of the defendant, Dakin, by the sheriff, was not absolutely void, as there was no clear departure from the directions of the statute; nor is there sufficient proof of any fraud. If for any reasons it had been voidable, the objections to it could not have been successfully urged in a collateral proceeding.

The interest acquired by the plaintiffs, under their purchase at the sheriff's sale, was, of course, subject to the statutory right of redemption. That was, as the word "redemption" imports, a right *in rem*, and could be inferred only by one having, at the time, an interest in or lien upon the land. Dakin's title had passed to the plaintiffs before he had offered to redeem. The right of redemption had, therefore, passed from him, and his offer was nugatory. The sheriff advertised and sold the lands, under the execution, in the suit of Fuller and others against Orville Dakin. Those plaintiffs had not, after such sale, any right to redeem. Their execution had not been previously effectually withdrawn. But there was no advertisement, and consequently no effectual sale, under the executions in favor of the Birds, or under either of them. Their right to redeem the land did not pass by the sheriff's sale, and it existed at the time of the sale under the mortgage. It was in no manner dependent upon the continuance of the title of the judgment-debtor, nor of his right to redeem. The rights of the debtor and of his judgment-creditors are distinct. The creditor may redeem after the debtor's right to do so has expired. The debtor could not deprive his creditors of their inchoate right by any voluntary act; nor would it pass by any conveyance to

which they were not parties. After the sale and conveyance under the foreclosure suit, it could not be executed *in rem*, but it would be transferred in equity to the proceeds. The rule providing for the inquiry as to the rights of lienholders to the surplus moneys on mortgage sales, was adopted for the purpose of protecting and enforcing such rights.

It seems to me, so far as I can ascertain the facts from the voluminous papers submitted to us, that the referee erred in rejecting the claims preferred by E. and J. Willetts, who are the assignees of the Bird judgments. I infer, from the papers, that the executions under those judgments were issued and delivered to the sheriff after he had published the advertisement under which (after several postponements) he sold the property. If that was not so, the referee can make a positive statement that the sale was made under an advertisement originally published under the Bird execution, as well as the others; and then his report may stand. But in order that he may do that, or, if that cannot be done consistently with the proofs, that he may correct his report by allowing the Willetts the preference to which they are entitled, the order of affirmance should be opened and the case sent back to the referee.

BIRDSEYE, J.—I concur fully with the views expressed by the learned judge who decided this case at the special term, upon the points raised before him. But upon the argument before us, several other questions have been discussed, which will be briefly examined.

It is true that on a reference as to surplus moneys, under the forty-eighth rule of this court, the referee can only take into consideration absolute liens on the estate,—those which subject it to be sold, as distinguished from any equitable claims not matured into liens. (King *a.* West, 10 *How. Pr.*, 333.) But the referee, when he finds a lien regular and valid upon the record, has no right to go behind it, to inquire whether it is irregular, or fraudulent, or inequitable. He is to inquire, simply, whether a lien exists: not whether it ought to exist. That inquiry is reserved to the court, and can be made only on notice, and in such manner as to present the objection to the lien distinctly, and so that each party may be heard, and the decision may be reviewed. Whether such investigation be had

on motion, or more formally by suit, with pleadings presenting plainly the point to be litigated, it will be wholly distinct from the examination which would be had, if the claims of the appellants are sustained. For the referee, under the forty-eighth rule, proceeds without pleadings stating the rights or claims of the parties; and without notice, as between the conflicting claimants, of the nature of the claims they intend to assert. He has no power to conduct the investigation of any such matter. He is not a referee under the Code, and possesses none of the enlarged powers given to such a referee, by section 272 of the Code. He is only to fulfil the duties prescribed for him by rule forty-eight. He has done this, when he has ascertained and reported the amount due to the claimant, or any other person, which is a lien upon the surplus moneys, and has ascertained the priorities of the several liens thereon.

Nor when he has made his report, and a motion is made for its confirmation and for distribution of the surplus, according to its findings, can the justice or regularity of the liens be examined, upon the evidence taken before the referee. The court would, perhaps, have the power to make an order in regard to many of the usual objections to such liens, on such a motion. But I think we should not do so, collaterally; but only upon applications made directly for that purpose, on a sufficient notice, in which the defects, irregularities, or frauds shall be specifically pointed out.

These views will dispose of most of the objections discussed on the appeal, other than those which were rightly disposed of in the court below. Among these, is the objection that the lands, though they consisted of distinct parcels, were sold together instead of in single lots, which is a mere irregularity. (See Lambertson a. Marvin, 8 *Barb.*, 9; Griswold a. Fowler, 4 *Abbotts' Pr.*, 238). Also, the objection to the regularity of the adjournment of the sale, on the 24th of December, 1856; the alleged legal, if not actual fraud in the sale, at the time, in the manner and for the price at which the sheriff sold on the executions; the alleged concealment of the withdrawal of the plaintiff's executions; the supposed assurances of the sheriff, on the day of sale, that the sale would be adjourned; his failure to adjourn, to avoid a sacrifice of the property; and the supposed withdrawal of the execution of Fuller, Dayton & Co., by

the direction given to the sheriff by their attorney, on the 6th of March, 1857, that if no one was present at the sale on behalf of Fuller, Dayton & Co., they would rely upon the surplus moneys.

Each of these objections referred either to the regularity of proceedings in suits separate and distinct from that in which the reference was had, or to the good or ill faith of the parties to those suits, or of the officers who were executing the process of the court therein. To allow such matters to be inquired into, either before the referee, or on the motion to confirm his report, upon evidence offered before him, would subvert the established practice of the court, run counter to all settled principles of law, and expose to great danger the rights of all claimants to such funds.

The only remaining question arises on the following facts.

The sheriff's advertisement of sale was first published on the 19th day of June, 1856; the sale being fixed for the 12th day of August, then next. The notice stated that the sheriff, by virtue of sundry executions, to him directed and delivered, against the goods and chattels, lands and tenements of Orville Dakin, would expose for sale the lands described, &c. At the time of first publishing this notice, the sheriff held a large number of executions against Dakin, including, among them, one on the judgment of Fuller, Dayton & Co. But the executions on the three judgments of the Messrs. Bird, now held by the appellants Willetts, were not delivered to the sheriff till the 23d day of July, 1856.

The sale was not had on the day appointed, but was adjourned from time to time till the 16th of March, 1857, when it took place. The sheriff's certificate states that the sale was made upon the executions on the Bird judgments, as well as on many other executions. The adjournments were advertised, by reprinting the original notice of sale, with a notice of the postponement subjoined, and referring to the original notice for a statement of what the sale was to be. The notices of adjournment all state that "the sale of the above described premises is postponed." Some of the adjournments were for six weeks and more. The appellants now insist that "the sale" thus had was the same sale first advertised; that it could only be made on the executions referred to and described in

the original notice as those which had been, previously to that date, directed and delivered to the sheriff, and which were then held by him; that the adjournments only postponed the sale as thus limited; and that the attempt to sell on the executions subsequently received, was not merely irregular, but void, for want of a compliance with the statutory prerequisites to the sale of previous notice.

If this be so, the lien of the Bird judgments was not devested from the lands and transferred to the purchaser at the sheriff's sale; and the holders of these judgments are entitled to payment of them out of the surplus moneys,—the general lien of the judgments not being turned into a specific lien, in favor of the person bidding and receiving the sheriff's certificate.

In selling property upon execution, the sheriff acts by virtue of a statutory power. If the power does not exist, no title passes. (11 *N. Y.*, 61.) Every statute authority to devest the title of one without his consent, and transfer it to another, must be strictly pursued, or the title will not pass. (Olcott *a.* Robinson, 20 *Barb.*, 148.)

In Mascraft *a.* Van Antwerp (3 *Cow.*, 334), this court held that a sheriff who had advertised on but one execution, could not sell under that and another execution, by virtue of the same advertisement; though the other execution came to the sheriff's hands on the same day as the first execution, and might have been included in the advertisement of the sale. (And see Brewster *a.* Cropsey, 4 *How. Pr.*, 220.)

Neither of those cases is like the present, in all respects. In both of them, the advertisement of sale was in such form as wholly to exclude the subsequently received execution. And in neither of those cases did the sheriff assume to sell upon the second execution. In both cases the sale was without the consent of the defendant in the executions. Here, the advertisement of sale did, in fact, convey to the persons resorting to it for information, and inquiring of the sheriff upon what executions he designed to sell, notice that the sale would be made on the Bird executions. The sale was actually made on those executions. That fact is stated in the certificate. So far from such a sale being made without the consent of the appellants, the owners of those executions, the proof seems to me clear that they consented to it, and directed it to be made. The fact

Husted *a.* Dakin.

that it was so made was known to the parties forthwith after the .sale. They made a motion to set aside the sale, in the actions in which those executions were issued. But this defect in the notice of sale was not then pointed out. Nor was it discovered at the hearing before the referee as to the surplus moneys; nor on the motion at special term, to confirm the referee's report. But it escapes all observation, until this argument at the general term.

It is true, that the sale, as first advertised, referred to certain specified executions, not including those issued on the Bird judgments. The same sale thus advertised, was adjourned from time to time, and was subsequently had. There is a clear logical inconsistency between the sale as made, and that which was advertised. The sale was made on executions not intended to be the foundation of it in the notice.

For this reason, my associate is of opinion that the sale was void as to the Bird executions. I shall concur with him in this conclusion, though not without some hesitation and reluctance. The statute does not require the execution or executions to be described in the advertisement of sale. It is sufficient, if it state that the sale is to be pursuant to an execution or executions. The time and place of holding this sale were publicly advertised previously, for six weeks, in the manner prescribed by the statute. For more than six months previous to the sale, the reference in the notice to the executions under which the sale was to be had, if considered as then first made, would have included those issued on the Bird judgments; although, speaking as of the date of its first publication, it would not have included them.

All the direct and positive requirements of the statute as to notice of the sale seem, therefore, to have been complied with. Nor is it easy to perceive what beneficial consequence to any person could have resulted, had the sheriff, after receiving the Bird executions, in July, 1856, either abandoned the first notice of sale, and published a new one in its place; or, without withdrawing that, inserted another notice of a sale to be had under such other executions as had been delivered to him since the publication of his previous advertisement of sale. Either course, it would seem, would merely have increased the costs of advertising to be paid out of the proceeds of the sale.

It may be that the rule contended for by the appellants will work some inconvenience, if made a general one. There will be no little force in the suggestion of counsel in Mascraft. a. Van Antwerp, that a debtor's property may never be sold, if every execution, as it comes to hand, requires another advertisement.

But, in its application to this case, the rule will only relieve the appellants from a loss which, at the utmost, is the result of a mere inadvertence on their part. The sheriff's sale was under the control of the senior judgment-creditors. It produced only $200; which was much less than the lands were really worth. The whole proceeds were swallowed up by the expenses of sale and the first executions. It seems like a hardship that the lien of the appellants' judgment should by such a sale be devested from the lands, and transferred to the bidder at the sale, and they thus excluded from sharing in the proceeds of property to which they were, in fact, entitled.

The order of the special term must be modified by declaring that the sheriff's sale, under the executions upon the judgments in favor of Bird & Bird, was void as to those executions, and that such judgments are liens upon the surplus moneys, and shall be paid in the order of their priority, with $10 costs of motion.*

---

* EMOTT, J., being of kin to parties interested, took no part in the decision of this case; and the same was, by consent, heard and decided by the other two members of the court.