The Mutual Life Insurance Company of New York *vs.*
Henry C. Bowen and others.

On a proceeding for the distribution of surplus moneys arising from the sale
of mortgaged premises under a decree for the foreclosure of the first mort-
gage, the holders of a fourth mortgage may set up, before the referee, usury
in a third mortgage.

If the third mortgage is affected or tainted with usury, it is void as to the hold-
ers of the fourth mortgage, and as to them, is not a lien, either at law or in
equity, on the surplus moneys.

A foreclosure suit can not be said to have terminated until the surplus moneys
are disposed of, in that suit.  The court has not only the power, but it is its
duty, *in that action,* to provide for the equitable distribution or disposition of
the surplus moneys.

The reference as to liens upon the surplus moneys, in a foreclosure suit, is not
a *collateral* reference; nor is an issue as to usury in a subsequent mortgage,
arising on the reference, a *collateral issue.*

That issue, though arising on the reference, is a *direct* issue, necessarily to be
determined before the court can finally and completely administer the whole
of the fund resulting from the sale of the mortgaged premises.  CLERKE, J.
dissented.

THIS was a proceeding for the distribution of surplus
moneys arising from the sale of mortgaged. premises
under a decree of foreclosure.   John J. Phelps held a mort-
gage upon the premises, second to that of the plaintiffs in
this suit.   Both those mortgages were paid out of the pro-
ceeds of the sale ; and there remained a surplus of $5487.18
to the credit of this action.   The Broadway Bank held a third
mortgage upon the property sold under the decree of fore-
closure in this action; and Hutton, Sturgis, Iselin and
Smythe held a fourth mortgage.   Upon the application of
the Broadway Bank an order of reference was obtained, under
rule 76, referring it to John B. Haskin, Esq. "to ascertain
and report the amount due to the bank, or to any other per-
son, which is a lien upon such surplus moneys, and to ascertain
the priorities of the several liens thereon."

On the hearing before the referee, Hutton, Sturgis, Iselin
and Smythe, the fourth mortgagees, appeared by their counsel,
and offered to prove that the mortgage held by the Broadway

Bank, was void for usury, and that the usurious agreement between the Broadway Bank and the makers of that mortgage, was as follows : Bowen, Holmes & Co. applied to the Broadway Bank to discount their notes for $125,000—the notes being for equal amounts, and running from one to thirty-six months, one maturing each month. It was thereupon agreed between Bowen, Holmes & Co. and the bank, that the bank would make such discount, deducting interest from the notes at the rate of seven per cent per annum. It was further, at the same time, agreed, that Bowen, Holmes & Co. should take from the bank, as a part of such loan or discount, a claim held by the bank against J. Howard & Son, which was long past due, and to recover which a suit was pending, for $11,229.65, at the par of said claim, and that they, Bowen, Holmes & Co., should pay the costs and counsel fees incurred in the prosecution of said claim to that time ; the former of which amounted to $100, and the latter of which amounted to $400. That the net proceeds of the discount should be carried to the credit of Bowen, Holmes & Co. upon the books of said bank, and that they, Bowen, Holmes & Co., should not draw to exceed $5000 a day thereof. The transaction was consummated on these terms ; seven per cent was deducted from each of the notes. The bank retained said sum of $11,229.65, the amount of the claim against J. Howard & Son, and $500 for the costs and counsel fees incurred in the prosecution thereof, handed over said claim against J. Howard & Sons to Bowen, Holmes & Co., and passed the balance of said discount to the credit of Bowen, Holmes & Co. upon the books of the bank. That at the time of said agreement, and of said transaction, J. Howard & Son were insolvent and utterly worthless, pecuniarly, and this was known to the bank and Bowen, Holmes & Co. That the agreement stated was corrupt and with the design to evade the statute of usury, and, on the part of Bowen, Holmes & Co. to give, and the bank to receive, a greater rate of interest than seven per cent. That, in fact, the bank did

receive by the transaction in question, a greater rate of interest than seven per cent upon the discount of said notes, to the extent before stated. That the whole moneys received by Bowen, Holmes & Co. was $100,221.83, and in addition thereto Bowen, Holmes & Co. lost, and the bank gained the use of all the money last aforesaid, except the $5000 a day which Bowen, Holmes & Co. drew in accordance with the agreement aforesaid, they having complied with said agreement in that respect. That the mortgage of the Broadway Bank in question was given by the mortgagors therein mentioned, who were then members of Bowen, Holmes & Co. makers of the notes before mentioned, to secure the payment of said notes, and that said mortgage was void, as well as said notes, for said usury.

The counsel for the Broadway Bank objected to the receipt of the evidence offered by the counsel for the fourth mortgagees, admitted to be junior mortgagees claiming only a right in the equity of redemption, and also to any evidence in behalf of any one, except as to the payment in pursuance of the order of the court. " 1. Because this mode of obtaining the ruling of the referee or the court on the receipt of testimony is in itself objectionable. It is not satisfactory or proper. 2. Because the testimony has been taken and closed on these subjects, and the effect of it adjudicated upon by the referee and the court. 3. Because the inquiry now before the referee is simply one as to the payment of the money to the Broadway Bank, which were secured to be paid by the bond and mortgage given to the bank. 4. Because junior mortgagees of the equity of redemption can not set up the defense of usury in a prior mortgage."

The referee held that the fourth mortgagees could not, on such reference, attack the mortgage of the Broadway Bank for usury ; that any evidence might be offered and received showing payment or payments on account of the mortgage held by the Broadway Bank ; but evidence on the part of

the fourth mortgagees, to show·usury in the Broadway Bank mortgage was excluded.

The referee found the following facts :

1. That the above entitled action was brought to foreclose a mortgage made by the defendants, Henry C. Bowen and others, to the plaintiffs, upon the premises described therein. 2. That the surplus in question had arisen from a sale of the premises under the judgment in the above entitled action. 3. That on the 21st day of January, 1860, Henry C. Bowen and Lucy Maria, his wife, Samuel P. Holmes and Eleanor A., his wife, and Anthony Gilkison executed and delivered to the Broadway Bank a mortgage to secure the payment of $125,000 and interest, which mortgage was upon the same property sold under the judgment in the above entitled action. He, therefore, reported that said mortgage of the Broadway Bank was the first and only lien on said surplus moneys, and that there was due upon said mortgage for principal and interest, on the 16th day of April, 1862, the sum of $5,487.18. And that the Broadway Bank was entitled to an order direct-ing the chamberlain of the city and county of New York to pay them the whole amount of said surplus money, $5,487.18. Said amount to be applied by them to the payment on account of the principal of said mortgage.

Exceptions having been taken to said report, the same were overruled by the court, at special term, and the report of the referee confirmed. And it was further ordered and adjudged that the chamberlain of the city and county of New York pay to David E. Wheeler, the counsel of the Broadway Bank, the said sum of $5,487.18 in his hands, to the credit of this cause, and the accumulations thereof, after the deduction of his proper and legal fees or charges, to be applied towards the payment of said indebtedness and the costs of the proceedings herein on the part of the claimants.

From the order made at the special term, the mortgagors and the holders of the fourth mortgage appealed. The

appeals were heard at the general term of this court, held in the first district in May, 1865, which court ordered a re-argument.

*Edwards Pierrepont*, for the mortgagors, appellants.

*A. F. Smith and E. De Witt*, for the fourth mortgagees, appellants.

*D. E. Wheeler*, for the Broadway Bank, respondent.

SUTHERLAND, J. The usury was established. It was a bald case of usury. The cases appear to show, conclusively, that the holders of the 4th mortgage could set up the usury. (*Post* v. *Dart*, 8 *Paige*, 640. *Morris* v. *Floyd*, 5 *Barb*. 130. *Dix* v. *Van Wyck*, 2 *Hill*, 522, and other cases cited by *Mr. Smith.*)

If the Broadway Bank mortgage was affected or tainted with usury, it was and is void as to the holders of the 4th mortgage, and as to them was not a lien either at law or in equity, on the surplus moneys.

The court had not only the power, but it was its duty *in this action* to provide for the equitable distribution or disposition of the surplus moneys. (*Livingston* v. *Mildrum*, 19 *N. Y. Rep.* 440. *Beekman* v. *Gibbs*, 8 *Paige*, 511, 512. *Field* v. *Hawxhurst*, 9 *How. Pr.* 77. *The Eagle Fire Company of N. Y.* v. *Flanagan*, 1 *How. Ct. of Appeals Cases*, 303.)

In fact, I do not think it can properly be said that this action has terminated, until the surplus moneys are disposed of *in it*. It is a mistake, I think, to call the reference a *collateral* reference, or the issue as to the usury, arising on the reference, a *collateral* issue. I think this issue may be said to be a *direct* issue, arising, to be sure, on the reference, but necessarily to be determined by the court, before the

I can see no reason why the question of usury, and the rights of parties to the reference proceeding, resulting from the determination of that question, should not be determined in this action. I can not see why the holders of the 4th mortgage, in this case, should be forced to bring another and independent action, to stay the payment of the moneys, and to litigate the question of wrong.

I am not clear that the cases of *King* v. *West*, (10 *How. Pr.* 333,) and *Husted* v. *Dakin*, (17 *Abb.* 137,) interfere materially with the views above expressed.

I think the order should be reversed.

CLERKE, J. (dissenting.) I adhere to the opinion which I expressed in *King* v. *West*, (10 *How. Pr.* 335.) The liens referred to in the 136th rule of the Court of Chancery, in the Supreme Court rule formerly numbered 48, and in the most recent edition of the rules, 76, are those which subject the estate to be sold under execution without any further intervention of the court. Questions which constitute issues can only be decided in an action commenced for the purpose of their adjudication, by the mode of trial provided for the determination of issues, duly joined on the pleadings by the respective parties. This can not be done on a mere collateral reference in an action commenced for another purpose. If such a practice can be permitted, it would alter the whole character and method of legal procedure. The authorities referred to by the counsel of the mortgagee do not sustain .

The judgment should be affirmed.

Order reversed.

[NEW YORK GENERAL TERM, June 7, 1866. *Geo. G. Barnard, Clerke* and *Sutherland,* Justices.]