1819.

HOWELL
v.
BAKER.

H. HOWELL, assignee of P. HOWELL, *against* BAKER AND
CLARK.

Whether an attorney for the plaintiff can purchase the property of the
defendant sold under execution, by the sheriff, for his own benefit ?
*Quære.*

Where the farm of the defendant, worth two thousand dollars, was
sold under a judgment and execution, on which not more than
eighty dollars was due, to the attorney of the plaintiff, who attend-
ed the sheriff's sale, at the request of the plaintiff, for *ten* dollars :
*Held,* that under the circumstances, the purchase by the attorney
was not to be considered as absolute, or intended originally for his
own benefit, but in *trust* for the respective interests of the parties
to the execution ; and the debtor, on a bill filed by him for that
purpose, was allowed to redeem the estate, on paying the balance
due on the execution, and the amount paid by the attorney, with
*interest*, &c.

*It seems,* that the gross inadequacy of price, connected with the facts,
that the sale was on a stormy day, when no person but the attorney
and deputy sheriff were present, might have warranted the in-
ference of *fraud*, if the conclusion, that the purchase was made in
trust, had not been a sufficient ground for letting in the debtor to
redeem his estate.

*September 4th.*  BILL filed *January* 19th, 1818, to redeem land, purcha-
sed by *C. Baker*, defendant, at the sheriff's sale, under cir-
cumstances which, as was alleged, constituted him a trustee
for *P. Howell*, the defendant in the execution.   A judgment
was recovered in *September*, 1809, in the *Ulster* Court of
C. P. against *P. H.*, at the suit of *J. R. Boyd*, for 112 dol-
lars and 95 cents, in which suit *C. B.*, the defendant, and an-
other, were the attorneys for the plaintiff.   A *fi. fa.* was
issued, and in 1810, the property of *P. H.*, being a house
and about forty acres of land, was advertised for sale.   On
the 29th of *December*, 1810, *P. H.* paid the defendant *C.
B.*, fifty dollars, and the sale was postponed.   The bill

stated, that *P. H.* had paid the deputy sheriff, in *November*, 1809, 27 dollars and fifty cents, and 18 dollars on the execution, in *December*, 1809. The property was again advertised for sale, and sold on the 15th of *May*, 1812, at public auction, by the sheriff, to *C. B.*, (who attended as attorney of the plaintiff, *Boyd,*) as the highest bidder, for 10 dollars. The bill stated, that *P. H.* had made several small payments on the judgment; and that, in 1814, he tendered to *C. B.* the balance due on the judgment, together with the 10 dollars paid by him, amounting, with interest, to 35 dollars and 15 cents, which he refused to accept; and that *C. B.* afterwards sold the premises for 1,200 dollars, to the defendant *Clark*, who purchased, with full knowledge of all the circumstances. The bill prayed, that the defendants might be decreed to release the premises to the plaintiff, and deliver up the possession, &c.

The defendant *B.*, in his answer, denied that he purchased the property with intent to hold it as security only for the balance due on the judgment, but that he purchased for his own benefit. He alleged, that he afterwards paid *Boyd*, the plaintiff, the balance due on the judgment; and that 80 dollars were due at the time of sale.

It appeared from the evidence taken in the cause, that the property, when it was sold at auction in 1812, was worth about 2,000 dollars; that *P. H.* was absent from the state at the time; that it was a stormy day, and no persons but the deputy sheriff and *B.* were present at the sale; that after the sale, *B.* frequently said, that he would give up the property to *P. H.* if he would pay the balance due on the judgment, and the ten dollars, and compensate him for his trouble; that he had told *Boyd*, the plaintiff, that he had bid off the property for him; and that the defendant *C.*, before he purchased, knew all the circumstances.

*B. Robinson*, and *Bristed*, for the plaintiff.

*P. Ruggles,* contra.

THE CHANCELLOR. The defendant *B.* was one of the attorneys to the execution under which the sheriff sold the land, and it might be a question whether an attorney can, in such case, become a purchaser for his own benefit. He is the agent of the plaintiff, and generally, has the control of the execution, and may direct the time and place of sale. It is well known that the sheriff receives his instructions from the attorney, and usually follows them, under the general regulations of the statute, in pressing, or in postponing the sale, and as to the terms to be prescribed, and the particular parts of the real estate to be selected. It is dangerous to allow a person who has such a material agency in the sale, the capacity of buying in, on his own account. He who is entrusted with the business of others, ought not to be allowed to make that business an object of interest to himself. It tends to abuse and corruption. It is upon this principle that the assignees of a bankrupt are not allowed to become purchasers on the sale of the bankrupt's estate. The bringing it to sale, and the time and manner of the sale, are very much in their power. A purchase by the *solicitor* of the assignees is supposed to be within the reason of the prohibition, for he is their agent to direct the sale ; and those who have a duty to perform for others, should not, in the discharge of that very duty, deal for themselves. It has accordingly been held, in *England,* (*ex parte Hughes,* 6 *Ves.* 617. *Ex parte James,* 6 *Ves.* 337.) that purchases of the bankrupt's estate, at public sale, by the assignees, or their agent or solicitor, are not valid, but will be considered as made in trust for the persons entitled to the surplus, and will be set aside on equitable terms. In *Hall* v. *Hallet,* (1 *Cox,* 134.) Lord *Thurlow* observed, that "no attorney can be permitted to buy in things in a course of litigation, of which litigation he has the management. This the policy of justice will not endure."

But though the rule disqualifying trustees, and particularly solicitors and attorneys, from purchasing at sales brought about through their agency, has strong pretensions to be applied to this very case, I do not perceive it to be incumbent upon me, at present, to decide that point. The purchase by the defendant *B.* was made under special circumstances, which are sufficient, of themselves, (and particularly when taken in connection with his character as attorney to the execution,) to constitute him a trustee for the parties, whose interests were concerned in the sale. *Boyd*, who was plaintiff in the execution, directed the defendant *B.* to attend and bid off the property; and the defendant *B.*, afterwards, confessed to his client, that he had done so, and that the deed would be executed to *Boyd.* He, also, admitted to *Howell*, the defendant in that execution, that he had made a temporary sale of the property, to prevent the expense of further advertising it, and that he would receipt the execution as soon as it was paid up. These two witnesses establish the fact that the purchase was not intended, at the time, to be absolute, and for the benefit of *B.* In addition to this proof, the facts admitted by the defendant *B.*, in his answer, that there were not above eighty dollars due on the execution, at the time of sale, *including his costs*, and that he bid only ten dollars, though he afterwards discharged the execution, and sold the farm for 1,200 dollars, lead strongly to the same conclusion.

It would be very inequitable, even if it were lawful, to allow the purchaser, in such case, to appropriate the bid to himself. *Non omne, quod licet, honestum est,* is the observation of *Paulus*, as quoted in the *Digest ;* (50. 17. 144.) and we have a similar observation from another *Paul*, who received inspiration from a purer source than the *Roman* law. (1 *Cor.* vi. 12.) +

Indeed, such gross inadequacy of price, when taken in connection with the fact that the sale was on a stormy day, and

+ "all things are lawful unto me. But all things are not expedient: all things are lawful for me, but I will not be brought under the power of any."

that no persons were present but the sheriff and the defendant *B.*, would well warrant an inference of fraud on any other ground than the one I have taken. The most reasonable conclusion, and the only one honourable to the defendant *B.*, is, that the purchase was intentionally made, at the time, in trust for the respective interests of the parties to the execution.

*Howell* did nothing, afterwards, to release his right, and discharge the trust, and when *B.* sold to the defendant *C.*, the right of *Howell*, or his assignee, to redeem the property, existed in full force.

Nor is the defendant *C.* entitled to protection as a *bona fide* purchaser, without notice. It is clearly established by the testimony, that he purchased with knowledge of all the material circumstances attending the purchase by *B.*, and the right of redemption remained in full force against him. He purchased at his peril, and after being duly apprized of the infirmity of the title of *B.*

I shall, accordingly, decree, that the plaintiff is entitled to redeem the estate, upon paying the balance due upon the execution, with interest, after deducting all payments made by *Howell* to the sheriff, or to the defendant *B.*, and upon paying the amount, with interest, of all the incumbrances upon the estate existing at the time of the sale, and subsequently discharged by either of the defendants, and upon paying the cash value of all *bona fide* and substantial improvements made by the defendant *C.*, since his purchase. I shall direct a reference to ascertain the amount of the same.

Decree accordingly.