## Norton *vs.* Stone and others.

Where the owner of premises, which were subject to the lien of a mortgage, sold the same and took back a mortgage for the purchase money, payable in three instalments, and assigned such mortgage to M., who subsequently filed a bill to foreclose the same, and during the pendency of that suit, sold and assigned the second instalment, and guarantied the collection thereof, and the premises were afterwards sold under the decree of foreclosure and bid in by M. for the amount of the two first instalments with interest and costs, and were subsequently purchased by J. under a judgment against M. and the prior mortgage upon the premises was afterwards foreclosed: *Held,* that J. was entitled to the whole surplus moneys upon the sale under the last decree of foreclosure, to the exclusion of the assignee of the second instalment of the junior mortgage; although at the time of the assignment of that instalment, M. had agreed to bid to the amount of both instalments, on the sale under his decree, and that the sale should be for the benefit of the assignee after paying the first instalment, and interest, J. being ignorant of that agreement at the time he purchased in the premises under his judgment against M.

Where real estate is purchased by one person with the moneys of another, and a conveyance is taken in his own name with the consent of the owner of the fund, there is no resulting trust in favor of the latter, under the provisions of the revised statutes; but the person to whom the conveyance is given is entitled to the premises absolutely as against him.

April 7. THIS was an appeal from a decision of the vice chancellor of the eighth circuit, relative to the surplus moneys raised upon the foreclosure and sale of mortgaged premises which were sold under the decree in this cause. The premises originally belonged to Norton, the complainant, who sold the same to the defendant Stone in 1834, and took back the mortgage which was foreclosed in this suit, to secure the payment of the purchase money. Upon the sale under this decree, in June, 1839, the premises sold for $416,82 more than the complainant's debt and costs; which surplus was claimed by L. C. Woodruff the appellant, and also by J. & W. James the respondents, under the following circumstances, as stated by the master in his report: In March, 1836, Stone, who then owned the premises subject to the payment of the complainant's mortgage, sold and conveyed them to J. Paige for $4000, and took

back a mortgage for the purchase money payable in three equal yearly instalments, with annual interest on the whole sum from the date of that mortgage. The first instalment not having been paid by Paige, his bond and mortgage was placed by Mitchell, the assignee thereof, in the hands of his solicitor to be foreclosed; and in January, 1838, the premises were sold under a decree upon the Paige mortgage, and were bid in by Mitchell, the assignee, for $3196,57; the amount of the two first instalments which had then become due, with interest and the costs of foreclosure, and were duly conveyed to him by the master. In May, 1837, J. & W. James, the respondents, recovered two judgments in the supreme court against Mitchell; and after he became the purchaser of the mortgaged premises at the master's sale under his decree upon the Paige mortgage, they caused their executions to be levied on the premises, and the same were sold by the sheriff, in November, 1838, and purchased by the respondents for the sum of $700; and were never redeemed from that sale. By virtue of that purchase of Mitchell's interest in the mortgaged premises, which he acquired under the master's deed to him upon the Paige mortgage, the respondents claimed the whole surplus moneys in the present suit; which moneys were insufficient to satisfy the $700 and the interest thereon from the time of the sale by the sheriff.

During the pendency of Mitchell's suit to foreclose the Paige mortgage, he sold and assigned the second instalment of $1333,33 of that mortgage, which was not then due, together with the interest thereon after the first year, to N. T. Rosseter, and guarantied the collection thereof. This assignment to Rosseter was dated the 6th of July, 1837, and was duly recorded in the book of mortgages the same day. Mitchell also made a further agreement at the same time, relative to the second instalment, which did not appear by the master's report to have been recorded; by which he stipulated that no sale should take place under the decree of foreclosure to be obtained on the bond and mortgage, or in any other manner, until the second instal-

ment should become due; and that any sale that should be made of the mortgaged premises should be for the whole amount of the two first instalments, and should be for the use and benefit of Rosseter the assignee, to the amount of the $1333,33 and interest thereon from the 24th of March, 1837, after satisfaction of the first payment due on the bond and mortgage. The next day after the assignment to Rosseter, he assigned the second instalment to S. Murch, who in August thereafter assigned the same to J. C. Morse; who thus became and was the owner thereof at the time of the master's sale of the mortgaged premises to Mitchell, in January, 1838. About three weeks after that sale, Morse re-assigned the second instalment to Murch; which assignment was also recorded in the book of mortgages. And in March, 1839, about four months after the purchase of the premises by the respondents at the sheriff's sale, Murch assigned and quit-claimed to Woodruff, the appellant, that instalment and all his right, title and interest in and to the proceeds of the master's sale under the Paige mortgage, or the mortgaged premises by virtue of that sale or foreclosure.

The master decided that Woodruff was entitled to a portion of the surplus moneys raised upon the foreclosure of the original mortgage given to the complainant in this suit, in proportion to the amount which the second instalment and interest thereon, at the time of the purchase by Mitchell, bore to the whole amount bid by the latter at the master's sale, exclusive of the costs of foreclosure. But upon an informal exception to the report, the case being brought before the court by consent of the parties without any written exceptions, upon the facts as stated in the report itself, the vice chancellor overruled the decision of the master, and directed the whole surplus moneys to be paid to the respondents. From this decision Woodruff appealed.

*John L. Curtenius*, for the appellant.

*H. Gardner & A. C. Bradley*, for the respondents.

THE CHANCELLOR. It is stated in the report of the master that Woodruff, the appellant, procured the assignment of this second instalment on the Paige bond and mortgage to be made to Rosseter. But it does not appear that such assignment was held by Rosseter, or by any of the subsequent assignees, in trust for the appellant. On the contrary, the first, as well as the subsequent assignment, appears to be an assignment for the sole benefit of the assignee. The appellant can claim no interest in the surplus moneys, therefore, except such as he is entitled to under the last assignment, and which Murch would have had the right to claim as against the respondents, at the time of that assignment, in March, 1839. I am not aware that this fact can have any bearing upon the decision of the cause, and I only advert to it because the appellant's counsel appears to suppose that Rosseter, and the subsequent assignees of this second instalment, were mere naked trustees for the appellant.

It does not appear in this case that Mitchell bid off the premises at the master's sale, and took the conveyance to himself absolutely, without the consent of Morse who was then the assignee of the second instalment, or in violation of any trust; unless the agreement of July, 1837, accompanying the assignment to Rosseter, is of itself a valid stipulation that Mitchell shall bid in the property and hold it upon the trusts specified in that agreement. There could not, therefore, be a resulting trust in favor of the assignee, merely on the ground that the second instalment, which formed a part of the consideration of the master's deed, was paid by such assignee. For the revised statutes do not permit a resulting trust in real estate to be raised in that manner, except in favor of the creditors of the person who pays the purchase money. (1 R. S. 728, § 51, 52, 53.) The assignment itself, which was the instrument put on record, contained no stipulation as to the bidding in of the property, at the sale under the decree. And the guaranty that the second instalment should be collectable was a mere personal agreement, which would authorize the assignee to

1840.

Norton
v.
Stone.

bid upon the property, to the extent of the second instalment, beyond the amount of the first instalment and interest and costs ; and to have that amount paid to him out of the purchase money, under the direction of the court. To have protected such an interest against subsequent purchasers of the legal estate which might be conveyed by the master's deed, the assignee should have given notice of his rights to the master who made the sale, and requested such master not to give the deed to Mitchell until that amount of the purchase money was paid to su h assignee. And he might, if necessary, have applied to the court under who:e direction the sale was made, to protect his rights as assignee ; by directing the master to pay over to him the amount of that instalment and interest, out of the purchase money. If the respondents stood in the situation of mere judgment creditors of Mitchell, having only a general lien upon the land in the hands of their debtor, it might not perhaps be too late to consider the unpaid purchase money, upon the master's sale, and which ought independent of the special agreement to have been paid to the assignee of the second instalment, as a subsisting equitable lien in favor of such assignee upon the lands in the hands of Mitchell, so as to give it a preference over the general legal lien of the judgments against him. But the subsequent sale under those judgments turned what was before a mere general lien into a specific lien upon the premises, in behalf of the purchasers at the sheriff's sale, to the extent of their purchase money and interest. And in the absence of any allegation to the contrary, the respondents must be considered as bona fide purchasers without notice of the equitable rights of the assignee. Even if the registry of this assignment to Rosseter, in the book of mortgages, would be constructive notice to a purchaser, under a decree of foreclosure in a suit commenced before that assignment was made, which I am inclined to think it would not be, (as no one thinks of searching the book of mortgages subsequent to the commencement of the foreclosure suit under which he purchases, unless it appears

that the complainant has neglected to file the notice of the *lis pendens* which he is required to file by the 133d rule,) it clearly would not be notice to a subsequent purchaser, that the original purchaser at the master's sale had not paid the full amount of the purchase money to the master before he obtained his deed. It does not appear from the report of the master whether the amount bid at the sheriff's sale was more or less than the amount of the respondents' judgments. But that purchase discharged the lien of their judgments upon any other real estate which then belonged to their judgment debtor, to the extent of their bid, and all personal claim against him *pro tanto*. I cannot, therefore, in the absence of any allegation that they were not in any way injured by that bid, deprive them of the protection of bona fide purchasers, without notice of any equitable lien upon the property for the unpaid purchase money on the master's sale.

I do not think, however, this case turns upon that question. The agreement, which was made at the same time with the assignment to Rosseter, although separate therefrom, must be taken as a part of the same transaction, for the purpose of ascertaining what the parties intended. And taking both instruments together, I think it is evident they intended to give to the first instalment a preference in payment out of the proceeds of the sale of the mortgaged premises ; though they undoubtedly supposed the property was sufficient to pay both instalments, and the prior incumbrance of the Norton mortgage, if they knew that mortgage was still a subsisting lien. By that agreement the property was not to be sold until the second instalment became due, and then was not to be sold for less than the amount of both instalments. And such sale was to be for the use and benefit of the assignee of the second instalment, to the extent of that instalment and interest, *after the satisfaction of the first payment due on said mortgage.* The only rational construction I can give to this latter clause of the agreement is, that Mitchell should not let the property be sacrificed, at the master's sale, for the amount of the

first instalment merely ; in case the assignee should not then be able to raise the amount of that instalment and costs. But that Mitchell should see that it was bid up to the amount of both instalments, at least. And that if in so doing he was compelled to bid in the property, he should hold it in trust to pay the assignee out of the proceeds of the premises, upon a subsequent sale, the amount of this second instalment, after deducting from such proceeds the amount of the first instalment ; or in trust to convey the same to the assignee upon being paid the amount of the first instalment, with interest and the costs of the foreclosure. Whether a deed from the master conveying the property to Mitchell upon such a trust would have been valid, under the provisions of the revised statutes relative to uses and trusts, is not material to consider ; as the master's deed appears to have been an absolute conveyance. And all the appellant had a right to claim in any event, as against the legal lien of the respondents under their purchase at the sheriff's sale, was that this agreement should be carried into effect, so far as it could be, according to the intention of the parties to it. That intention I think was, that the first instalment should be first satisfied out of the proceeds of the property that Mitchell might be compelled to bid in, at the master's sale, to prevent a sacrifice thereof. And as the respondents had a legal lien upon Mitchell's title under the master's deed, and a preferable equitable lien to the extent of the first instalment, they would as judgment creditors merely have been entitled to the whole surplus money now in controversy ; even if they had not become such bona fide purchasers at the sheriff's sale without notice of any of these equitable rights of other parties.

The order of the vice chancellor which is appealed from must therefore be affirmed with costs.