The premises covered by the mortgages, which this suit was brought to foreclose, embracing a number of houses and lots in the city of New York, were incumbered by various mortgages, judgments and mechanics' liens. All those having liens were made parties to the suit. The court, in the first instance, made at special term the usual order, that the premises described in the complaint, "or so much thereof" as should be sufficient to raise the amounts due to the several mortgagees, and which might be sold separately, without material injury to the parties interested, should be sold at auction by a referee. Pursuant to this order the referee sold enough of the premises to pay off the several mortgages, leaving two of the houses and lots still undisposed of. On the day of sale, George F. Quinn, one of the defendants, who had filed a notice claiming a mechanic's lien for $2,000 upon all the houses and lots, applied to the court at special term for an order that the entire premises be sold for the payment of the several liens thereon, alleging as a ground for the application that he was apprehensive that portion of his lien which rested upon the houses and lots sold would not attach to and become a lien upon those not sold; in other words, that a distributive portion of the lien would be considered as resting upon each house, and hence that a sale of any of the houses under a prior incumbrance would pro tanto extinguish the lien.
Upon this application it was referred to a referee to ascertain and report the various liens, and the order in which they were payable, with a view, as it would seem, to enable the court to *Page 442 
decide upon the propriety of ordering a sale of the houses and lots remaining unsold; but before any report by the referee, an order was entered by consent of parties, directing a sale of the entire premises, such consent being signed by the attorneys for all the defendants who had appeared in the cause, except one, upon whom notice of the application had been duly served, but who did not appear to oppose. Several of the defendants have never appeared in any stage of the cause.
At the sale which took place pursuant to this order, William A. Whitbeck became the purchaser of one of the houses and lots, but subsequently refused to complete the purchase on the ground that the sale was unauthorized. Upon application by the plaintiff to the court, at special term, an order was made requiring him to complete such purchase, and upon appeal to the general term, this order was affirmed. From this order of affirmance, Whitbeck, the purchaser, has appealed to this court.
The main question presented is, whether the court had power under the circumstances, to order a sale of the entire premises. It is a principle, which results necessarily from the nature of the power exercised by a court of equity, in ordering the sale of mortgaged premises for the satisfaction of the debt, that the court in making the order, is to take into consideration all the liens which exist subsequent to that of the mortgage itself. As these liens are all cut off by the sale, they must be protected by the court which orders the sale, or they are lost. Hence arises the necessity of making all the holders of liens of a date later than that of the mortgage, parties to a foreclosure suit. The equities of all such parties are as much before the court, and as much the objects of its care, as those of the owner of the mortgage primarily to be foreclosed. The court cannot, of course, content itself with giving such directions as will certainly produce satisfaction of the plaintiff's lien, without regard to its effect upon those which are subsequent; but should make such an order as, while it fully maintains the priority of the plaintiff, will best protect the rights and preserve the equities of all. *Page 443 
In furtherance of this doctrine the Legislature has enacted (2R.S., 193, § 165) that, "If in any of the foregoing cases, it shall appear to the court that the mortgaged premises are so situated that the sale of the whole will be most beneficial to the parties, the decree shall in the first instance be entered for the sale of the whole premises accordingly." This provision is simply confirmatory of principles, by which courts of equity must necessarily be governed in all cases of foreclosure. The doctrine was directly applied by Chancellor WALWORTH in the case of Snyder v. Stafford (11 Paige, 71), where the mortgage covered two separate and distinct parcels of land, and a sale of both separately was ordered — although one alone might, and probably would, have sold for enough to satisfy the mortgage — on the ground that the rights of subsequent incumbrancers were such that they could not be effectually protected by a sale of only one of the parcels. There is no doubt, therefore, of the power of the court to order a sale of the whole premises, with a view, not to the satisfaction of the plaintiff's mortgage, but to the better protection of the subsequent liens; and this power might as well be exercised after the sale of enough to satisfy the primary lien as before, so long as the parties and the subject matter of the action remain before and under the jurisdiction of the court.
If the court had failed, in the order first made, to protect the equitable rights of all the parties before it, it had not only the power, but it was its duty to correct the error by a supplementary order. The position of the counsel, therefore, that it was too late, after one order had been made, and a sale had taken place under it, for the court to make, or for the attorneys to consent to, a further order, is entirely untenable. The consent of the parties who had not appeared was not necessary: such parties are always bound by any order the court may make, within the range of its legitimate jurisdiction and power.
But it is insisted that until the defendant Quinn, and the other defendants who claim to have mechanics' liens, had established their claims by the proceedings prescribed in the lien law for that purpose, they had no liens which the court *Page 444 
could notice or was bound to protect. The mere notice by a party that he claims to have a demand cannot, it is argued, create a lien; and no court, it is said, is at liberty to inquire into the validity of this claim, but those upon which the jurisdiction is specially conferred by the lien law itself, the 4th section of which authorizes the party claiming a lien "to enforce or bring to a close such lien" by certain proceedings in the Court of Common Pleas, or Marine Court of the city of New York.
The consequences of this position, if fully sustained, would be, that the mechanic could have no protection until he had first obtained judgment. Suppose notice of a mechanic's lien to be filed between two mortgages upon a single house and lot: upon a foreclosure under the first mortgage, could the second mortgagee be entitled to the surplus, if any, without regard to the intervening lien, for the reason that the latter had not been established by judgment? If so, then the notice amounts to nothing, and the whole object of the act would be defeated. It is unnecessary to decide here whether the Supreme Court, acting as a court of equity, would under such circumstances have power finally to try the validity of the claim, or to determine the amount of the lien; but it would clearly be its duty, to see that the fund should not be withdrawn, beyond the reach of the lien, should it ultimately be established; and with a view to the exercise of this power, it must have the right to examine the claim, sufficiently, at least, to ascertain whether it is entirely without foundation. So, I apprehend, where the question presented is, not whether the inchoate lien shall be defeated altogether by a withdrawal of the fund after sale, but whether it shall be impaired by a particular manner of conducting the sale, the power of the court to investigate the claim and recognize the lien to the extent necessary to protect it, in case it should be finally established, must be the same.
The object of the law is to give a lien from the time of filing the notice for such sum as shall ultimately prove to be due; and it is the duty of all courts to aid in carrying this object *Page 445 
into effect. I cannot doubt, therefore, either the power or the duty of the Supreme Court to see to the preservation of a contingent lien like that existing here, as well as one that is absolute.
The other questions which have been discussed do not arise. Whether under the circumstances the notice of claim by the defendant, Quinn, should have been general upon all the houses, or several upon each; and whether, upon a sale of some of the houses, the whole claim would be transferred to and rest upon those remaining unsold, are questions which the Supreme Court was not called upon to decide. The court having as we have seen, jurisdiction to make the order, the consent of all the parties appearing in the case absolved it from any further responsibility in the matter. The parties who did not appear can never raise any question as to the propriety of the order, assuming that the court had power to make it.
There is no force in the objection that no proceedings were had under the order of reference to examine into the existence and priority of the various liens. It was waived by the parties who signed the consent, and those who made default can take no advantage of the omission.
The order appealed from should be affirmed.
All the judges concurring,
Judgment affirmed.