## LIVINGSTON a. MILLER.

*Supreme Court, First District; At Chambers, Dec., 1859.*
*Again, General Term, February, 1863.*

MECHANICS' LIEN.—EFFECT OF SALE.—ENTIRE AND DIVISIBLE CONTRACT.—SURPLUS MONEYS.—MARSHALLING OF SECURITIES.

Under the Laws of 1855, ch. 404, § 1,—which provides that where judgment shall be rendered in favor of the claimant in mechanics' lien cases, such judgment shall direct the sale of the interest of the owner at the time of the filing of the lien,—a judgment and sale so had cut off all subsequent liens.

Nor is the operation of such sale affected by the foreclosure of a prior mortgage intermediate the filing of the notice of lien and the sale, so as to deprive the lien-holder of any surplus moneys.

Where a mechanic's lien for materials furnished for the erection of several houses, supplied under a contract for a sum in gross, has attached, the lien-holder is entitled to be paid out of all or any of the houses.

Thus, where a mechanic's lien for materials furnished for the erection of seven houses under an entire contract had been prosecuted to judgment and sale,—*Held*, that such lien-holder was entitled to the payment of the full amount of his lien from the surplus moneys arising upon the foreclosure and sale of four of the houses under a prior mortgage, and not merely to four-sevenths of his claim.

I. *December*, 1859.—Motion to confirm report of referee awarding surplus moneys.

This action was brought by Livingston Livingston against Elizabeth Miller, John Mildrum, William McAuley, Benjamin F. Pinckney, and thirty-four others, for the foreclosure of a mortgage upon seven houses and lots on the corner of Thirty-sixth Street and Fourth Avenue, New York city. There were

three prior mortgages upon several portions of the land. Judg-
ment was rendered that the fee of the premises be sold, that
the three prior mortgages be paid, and that Livingston's mort-
gage be paid out of the further avails of the sale. A provision
was inserted in the judgment, by which Pinckney, who had
purchased one of the lots from Mildrum, was allowed to release
his lot from the lien of the mortgages in question by applying
the balance due as purchase-money to satisfy the claims of the
mortgagees. A sale was made under this judgment, March 2,
1858. Before the commencement of this action, Edward Rob-
erts had filed a mechanic's lien against the premises, as the
property of Mildrum, on September 3, 1857, for $1,394.67;
Wm. McAuley filed a similar lien on September 30, 1857, for
$5,810; and various other persons had filed similar liens subse-
quently. All the liens were against the seven houses and lots,
and all the lien-claimants were made defendants in this action.

Only four of the lots were sold under Livingston's judgment;
they produced a surplus of $6,705.13. The purchaser of one of
the houses was compelled to complete his purchase by the
decision of the Court of Appeals.* The defendant Elizabeth
Miller, who held a first mortgage on one of the lots, obtained a
judgment of foreclosure on sale of that lot; the sale was made
at the same time with the sale of Livingston's action, and pro-
duced a surplus nearly sufficient to pay the lien held by Rob-
erts, to which purpose it was applied by a suitable proceeding
in the action of Miller *a.* Mildrum. McAuley, the second lien-
holder, commenced a foreclosure of his lien in the New York
Common Pleas, in February, 1858. His lien had been filed for
marble, &c., furnished for the seven houses under a written
contract with Mildrum, providing in general terms that McAu-
ley would furnish marble for the seven houses for the gross
sum of $7,000, and not at any specified price for each house.
Pinckney, on his own motion, was made a party defendant in
the foreclosure of McAuley *a.* Mildrum, and established the
fact that he had purchased his house and lot before McAuley's
lien was filed. McAuley had judgment for the foreclosure of
his lien, the sale of the remaining six houses and lots, and for
the payment of his claim, amounting to $6,137.47. On appeal

* Livingston *a.* Mildrum, 19 *N. Y.*, 440.

to the general term, this judgment was modified by deducting from his recovery to six-sevenths of the amount due upon his contract, on the ground that his lien had not attached to the Pinckney house. Under this judgment, on August 2, 1859, the six houses and lots were sold by the sheriff, and McAuley became the purchaser, and the sheriff conveyed to him, by a deed dated October 10, 1859, the interest which Mildrum had on September 30, 1857, in these six houses and lots. Mc-Auley, thereupon, moved in this action, upon notice, for the usual order of reference, to ascertain and report the amount due to him, or to any other person, which was a lien on the surplus moneys in this action, and to ascertain the priorities of the several liens thereon.

The referee, on November 28, 1859, reported that Edward Roberts had the first lien upon the surplus moneys, for $102.69, the amount remaining due to him upon his mechanic's lien, filed September 3, 1857, after applying thereto the surplus moneys arising from the sale of house and lot No. 2, under the foreclosure of Elizabeth Miller.

That William McAuley had the second lien thereon, under the mechanic's lien filed by him on September 30, 1857, and the judgment and sale thereon for $6,272.11.

The referee also reported the following subsequent liens proved before him: Edward Roberts, September 30, 1857, 2.15 P. M., $505.72; Job & Black, October 1, 1857, $937.33; Wm. H. Cochran, October 1, 1857, $531.46; George F. Quinn, October 8, 1857, $2,000, and various others; and that the surplus moneys should be paid to the several claimants, in the above order.

A motion was then made, on behalf of McAuley and Roberts, to confirm the report, and for a distribution of the money.

*Edgar S. Van Winkle*, for the motion.

*William W. Niles, David Hawley*, and *Lawrence J. Goodale*, opposed.

DAVIES, J.—In this case a motion is made to confirm the report of a referee as to surplus moneys.

Wm. McAuley, the claimant of the surplus moneys, on September 30, 1857, filed his lien, under the Mechanics' Lien Law,

claiming the sum of $5,791.88, for a balance due him for materials, &c., furnished to one Mildrum for erecting and building seven houses on the corner of Thirty-sixth Street and Fourth Avenue. Four being on the avenue, and three on Thirty-sixth Street. Upon the map filed with the report of sale in this cause, the houses and lots are numbered from 1 to 4 on the avenue, and from 5 to 7 on the street, and all were subject to mortgages when McAuley filed his lien.

No. 4, upon a payment provided for in the judgment, was withdrawn from the sale in this cause.

No. 2, under the foreclosure of a prior mortgage in another action, was sold by another officer of the court.

No. 1 was in like manner sold under another mortgage in another action.

In this action there were sold only four houses and lots, Nos. 3, 5, 6, and 7; and it is as to the surplus arising on this sale that the present controversy has arisen.

The plaintiff (McAuley), on proceedings perfected in the Common Pleas to close up his lien and ascertain the precise amount due from Mildrum to him, obtained a judgment in that court that he had a valid and subsisting lien on the six houses and lots (the house and lot No. 4 having been sold prior to filing his lien) for the sum of $5,549.22, with interest thereon from the 3d day of August, 1853. Under this judgment, the sheriff of the city and county of New York, on August 2, 1859, sold all the right, title, and interest which Mildrum had in the six houses on the day the lien was filed (September 30, 1857); and, by deed dated October 10, 1859, the sheriff conveyed the same to McAuley, the purchaser at the sale.

All the other claimants acquired their liens subsequent to that of McAuley, and they insist that he cannot have out of the surplus in this action of the four houses, 3, 5, 6, and 7, the amount of his judgment, which was for work and materials that went into the six houses, Nos. 1, 2, 3, 5, 6, and 7, but only four-sixths of it. Without considering the various suggestions made in support of the equities of the various claimants, it seems to me perfectly clear that McAuley, by his purchase at the sheriff's sale, and the deed to him, acquired all the rights and interests which Mildrum had in the premises at the time of the filing of the lien under which that sale was made.

The proceeding by lien is quite analogous to that by attachment. In the latter, the lien on the property attached is created at the time of the service of the attachment; and the subsequent judgment relates back, and takes effect from the time of the service of the attachment. (American Exchange Bank a. Morris Canal & Banking Co., 6 *Hill*, 362.) And, in the cases last cited, the junior judgments in the attachment suits were held to have the prior lien, by virtue of the attachment, over a prior and older judgment recovered on a junior attachment.

But we are not left to analogy or authority to ascertain the date of the lien of the judgment under which McAuley claims as purchaser. The act to amend the Mechanics' Lien Law, passed April 13, 1855 (*Laws of* 1855, 760, ch. 404), by its first section declares that whenever judgment shall be rendered in favor of the claimant in any proceeding commenced under the act hereby amended, such judgment shall direct the sale of the interest of the owner in the land and premises upon which the lien exists, to the extent of the right of such owner at the time of the filing of the notice of lien.

By the purchase at the sale under the judgment recovered upon such lien, McAuley (the purchaser) acquired all the rights of the owner in the premises at the time of the filing of the notice of lien. As a consequence, all subsequent liens are cut off, and he is entitled to the whole of the surplus moneys, subject to the payment of the lien and judgment thereon of Roberts, created September 3, 1857.

The report of the referee is confirmed, and the exceptions filed, overruled, with $10 costs.

II. *February*, 1863.—Appeal from the above decision.

From the order entered in conformity with this opinion, the defendants Job & Black, Wm. H. Cochran, and George F. Quinn, appealed to the general term.

*Wm. W. Niles*, for Black and Cochran, and *David Hawley*, for Quinn, appellants.—I. McAuley, in foreclosing his lien, did not make the subsequent lien-holders parties; their liens were

on file, they are not precluded by his foreclosure and sale, they have a right to redeem. McAuley should be repaid only the amount at which he bought at his sale. (Althause a. Warren, 2 *E. D. Smith*, 657; Gridley a. Rowland, 1 *Ib*, 670; Roberts a. Fowler, 3 *Ib.*, 632; S. C., 4 *Abbotts' Pr.*, 263; Bodine a. Moore, 18 *N. Y.*, 347.) The doctrine of *lis pendens*, as applied to the filing of a mechanic's lien (Kaylor a. O'Connor, 1 *E. D. Smith*, 678), does not cut off appellants' liens. In this case, the requisites of a notice of *lis pendens* were not complied with; new parties defendants were added, but no new notice was filed. The analogy is defective in other respects. (Burroughs a. Reiger, 12 *How. Pr.*, 171; Tate a. Jordan, 3 *Abbotts' Pr.*, 392; Warring a. Warring, 7 *Ib.*, 472; Benson a. Sayre, *Ib., note.*)

II. The sheriff's deed to McAuley does not cut off the subsequent lien-holders, because it was *pendente lite*, and after the subject-matter of the controversy had passed out of the power of that court, having been sold by proceedings in this, to which McAuley was a party. McAuley's proceedings subsequent to the commencement of this suit, to which he was a party, are void. (Murray a. Finster, 2 *Johns. Ch.*, 155.) His lien was cut off by the sale in this action, and with his lien his right to proceed on it. As all the liens are cut off, the holders are parties to this suit, and under the protection of this court. (Livingston a. Mildrum, 19 *N. Y.*, 440.)

III. The court will prevent such gross injustice as would be done here from this inadequacy of price. McAuley gave $10 for what is shown by the surplus here to have been worth nearly $7,000. (Groff a. Jones, 6 *Wend.*, 522; Howell a. Baker, 4 *Johns. Ch.*, 118; 1 *Story Eq. Jur.*, §§ 246, 247.)

IV. The mechanic's lien of McAuley being upon the seven houses, he can recover in this suit only the proportion thereof chargeable to the house or houses from the sale of which the surplus in this action arose. 1. The Mechanics' Lien Law expressly provides for the lien upon the house and lot for which the material is furnished or upon which the work is done. The remedy is statutory and extraordinary, and the provisions for their enforcement must be strictly pursued. (Roberts a. Fowler, 3 *E. D. Smith*, 632; S. C., 4 *Abbotts' Pr.*, 263.) 2. The judgment in McAuley's suit against the six houses is no bar to the appellants raising the question here.

Even if bound by it, the appellants are only bound by what is actually decided in that suit. A *lis pendens* only binds subsequent parties by what is raised therein; questions not raised are not *res adjudicata.* (Hopkins *a.* McLaren, 4 *Cow.*, 675; 2 *Pars. on Cont.*, 238.) The lien is not merged into the judgment.

*William R. Martin,* for the respondent.—I. McAuley has a good title to the money he has received. It is founded on his general lien filed to secure his general contract. This was adjudged to be a valid lien on the six houses, and the judgment relates back to the date of the lien. (Paine *a.* Bonney, 4 *E. D. Smith,* 734; S. C., 6 *Abbotts' Pr.*, 99.) By the sale under that judgment, and the sheriff's deed, McAuley acquired, in the words of the statute, the interest of the owner in the six houses, to the extent of the right of such owner at the time of the filing of the lien. (*Laws of* 1855, 760, ch. 404, § 1.) By the foreclosure of Livingston's mortgage, this interest of Mildrum has been converted into this surplus money, and the surplus money belongs to McAuley. (Norton *a.* Stone, 8 *Paige,* 222; Snyder *a.* Stafford, 11 *Ib.*, 77; Shepard *a.* O'Neil, 4 *Barb.*, 125.)

II. He is entitled to the money on the strength of his lien and judgment alone. The lien, and the judgment on it, relates back to the day of filing, as in an attachment case. (American Exchange Bank *a.* Morris Canal Co., 6 *Hill,* 362.) A prior lien is paramount. The notice of lien has the effect of a notice of *lis pendens* (Paine *a.* Bonney, 4 *E. D. Smith,* 734; S. C., 6 *Abbotts' Pr.*, 99; Kaylor *a.* O'Connor, 1 *E. D. Smith,* 678); and the lien is increased by, and valid for, the costs and expenses that accrue in foreclosing it. (1 *Paige,* 578; 9 *Ib.*, 620; Eagleson *a.* Clark, 2 *E. D. Smith,* 644; Althause *a.* Warren, *Ib.*, 657.)

III. McAuley was right in selling under his judgment. 1. At the time of the sale under his judgment all of the six houses had been sold, but the sale of No. 5 had not been completed; questions had been raised as to the title, which were taken to the Court of Appeals, and not decided till afterwards. 2. He had a right under his judgment to sell, as it would make his claim and position stronger. 3. He did not sell the land, but only Mildrum's "interest" in it on a certain day.

IV. McAuley's lien was general, and not several, nor is it. divisible or apportionable; the nature of the lien, whether it be a general lien, or a several and divisible one, depends on the contract. The fact that it calls for work for seven houses does not make it seven contracts, any more than a contract for one hundred barrels of flour can be construed into one hundred contracts, for one barrel each. (Secor *a.* Sturgis, 16 *N. Y.*, 548.) The contract, lien, and judgment are now successively merged into the estate and interest conveyed by the deed, and this is not divisible.

V. McAuley is not limited to taking from the proceeds of the four houses (from the sale of which this surplus arises) the proportion of the amount due him, according to the amount of material furnished to those houses. 1. The doctrine of marshalling securities is similar; different funds may be appropriated so as to benefit subsequent incumbrances, but only after providing payment of the prior lien. 2. In this case, the lien and judgment were general, and the deed is general, in the largest sense. All subsequent incumbrancers are bound by a judgment on a lien, whether they are parties or not. (Kaylor *a.* O'Connor, 1 *E. D. Smith*, 678.) 3. The general-term decision in McAuley *a.* Mildrum is not against this view. They decided that, since the Pinckney house had been sold before the lien was filed, that the lien did not attach on that house, and that McAuley could not make the six houses, on which his lien did exist, pay also for the marble which went into the Pinckney house, on which he had not created any lien.

By THE COURT.—CLERKE, J.—The contract for supplying marble was one contract. Having filed his lien in time to secure six houses only, the Common Pleas gave judgment for six-sevenths of his claim. But the lien having once applied, the claimant is entitled to be paid out of all or any of the six houses.

INGRAHAM, J., concurred.

SUTHERLAND, P. J.—If I understand the facts of this case, which are certainly imperfectly and loosely stated in the points of counsel, McAuley filed his mechanic's lien prior to the

commencement of this action, and was made a party to it; and the lots which were sold under the decree in this action, and from which the surplus in question arose, were thus sold prior to the sale and conveyance by the sheriff to McAuley under the judgment. This being so, I do not see how McAuley can rest his claim to the surplus on the sale and conveyance of the sheriff. That sale and conveyance were a mere nullity. The whole legal estate in the lots, we must assume, had passed by the decree in this action, and the sale or sales under it. But in equity, notwithstanding the foreclosure and sale would attach to the surplus or some portion of it according to the order of its date (see this case, *sub nom.* Livingston *a.* Mildrum, 19 *N. Y.*, 440), I think McAuley's right to any portion of the surplus must rest upon his original mechanic's lien.

It does not appear to be questioned that McAuley is entitled to some portion of the surplus; but the question is how much. He filed his lien on seven adjoining houses for materials furnished under one contract in their construction. It would appear, from the statements of counsel (for the case is not reported), that the Common Pleas has virtually held that his legal lien under the statute on the houses was, or ought to be, considered a lien for one-seventh of his claim for each house severally. In the distribution of the surplus moneys in question, the court ought to act upon just and equitable principles, having in view all the claimants; and I think it would be just and equitable, with reference to all the claimants, to adopt the principle which would appear to have been declared by the Common Pleas in reference to McAuley's lien upon the houses, and to hold that he has a lien upon the surplus to the extent of four-sevenths of his claim. The balance of the surplus should be distributed among the subsequent lien-holders in the order of priority, as to the subsequent mechanics' liens, observing the principle of divisibility or apportionment of the liens above indicated.

I think the order appealed from should be reversed, and the report of the referee set aside, and the case sent back to a referee to adjust the claims upon the surplus in accordance with the principles above indicated.

Order affirmed.