ALEXANDER DAVISON, Plaintiff, *v.* ROSANNA MACDONALD and Others, Defendants.

Supreme Court, Kings Special Term, April 10, 1925.

Mortgages — foreclosure — surplus-money proceedings — foreclosure action pending when contract of sale made — title to premises under contract did not pass to purchaser and same were sold to him under foreclosure — purchaser has equitable lien on surplus moneys for amount of down payment and expense of examining title — right of purchaser to sue vendors not basis for claim to surplus.

A purchaser who has made a down payment upon a land contract has an equitable lien upon the property for the amount paid, though he has not come into

possession. He also has a lien for the expense of examining the title where the contract so provides. The lien passes to the surplus in a foreclosure action, which was pending at the time the contract was made, and is not lost, though the purchaser obtains possession of the premises by purchase at the foreclosure sale. The mere right of the purchaser, prior to foreclosure, to maintain an action against the vendors for specific performance or to recover his down payment and expenses does not support a claim to the surplus.

MOTION to confirm the report of a referee in surplus-money proceedings.

*MacKinstry & Kornfeld,* for Herman LeVyne.

*D. D. Whitney,* for the defendants Rosanna MacDonald and others.

*O'Neil & O'Connor,* for the defendant Walter E. MacDonald.

*Bertram N. Manne,* guardian *ad litem,* for the infant defendants Ruth E. MacDonald and another.

CROPSEY, J.:

The property in question had belonged to Edward MacDonald, but had been in the name of his wife, Rosanna MacDonald. After his death, although the title was still in her name, it was established and not disputed that the property belonged to their four children, Joseph, Walter, Ruth and Helen, subject to the dower right of Rosanna. On November 27, 1923, Rosanna, Joseph and Walter signed a contract to sell the property to Herman LeVyne. The other two children, Ruth and Helen, did not join in the contract. At that time they were infants. The contract price was $3,500, of which $300 was paid down, and $1,700 was to be paid upon delivery of the deed, and the balance of $1,500 was to remain on mortgage, the contract providing that if the sellers could not procure a mortgage for that amount the buyer should have the right to do so, the sellers paying the expense. The title was to close on January 7, 1924. At the time the contract was made a foreclosure action affecting the premises was pending, and this fact was known to LeVyne. Of course the vendors in the contract could not give good title as the interests of the two infants were outstanding. While LeVyne denies that, at the time the contract was signed, he knew the infants had an interest, the other evidence in the record would justify a finding to the contrary. For the purpose of this motion, however, this fact seems immaterial. Title under the contract did not pass, and on February 20, 1924, the usual judgment of foreclosure was entered and the premises were sold thereunder on March 21, 1924. They were purchased by Herman LeVyne, the vendee in the contract, for $5,200. There was a surplus of $2,681.68, which is the subject of this proceeding.

Claims to the surplus were made by Herman LeVyne and all

the MacDonalds. The referee found that the infant children were each entitled to one-quarter of the fund after deducting the value of their mother's dower right, less the sum of $50, which each had received out of the $300 down-payment made by LeVyne, and that LeVyne was entitled to the balance. The holding as to the infant children is not attacked. The sole question presented upon this motion is as to the right of LeVyne to the balance. The referee held that as LeVyne had paid $300 on the contract and $5,200 upon purchasing the property upon the foreclosure sale, and certain moneys for attorneys' fees and disbursements, a total of more than $5,500, and at least $2,000 more than the contract price, it " would be unconscionable " to permit the adult owners to receive the balance of the surplus and so profit by their own default. The referee stated that he found that LeVyne was damaged to the extent at least of $2,000, and as, after deducting the infants' shares, he found that less than that sum remained, he awarded it to him.

The determination of this motion involves a consideration of the character of the claims that may be pressed and adjudicated in surplus money proceedings. Those proceedings are not collateral to the foreclosure, but are in the action itself. And the rights of lienors subsequent to the mortgage under foreclosure are before the court and must be protected as much as those of the owner of the property. (*Livingston* v. *Mildrum*, 19 N. Y. 440, 442; Thomas Mort. [3d ed.] § 1101.) A foreclosure is not terminated until the surplus is distributed in the action. (*Mutual Life Ins. Co.* v. *Bowen*, 47 Barb. 618.) A surplus arising upon a sale in foreclosure takes the place of the equity of redemption; and for the purpose of determining its distribution among those entitled thereto it is regarded as land. (*Albro* v. *Blume*, 5 App. Div. 309, 310; *Dunning* v. *Ocean National Bank*, 61 N. Y. 497; *Ellis* v. *Salomon*, 57 App. Div. 118, 120; Thomas Mort. [3d ed.] §§ 1110, 1119.) A claimant's right to any portion of the surplus must find its support either in an interest in the land foreclosed or in some lien upon it. (*Fliess* v. *Buckley*, 90 N. Y. 286, 292; *Albro* v. *Blume, supra,* 311.) And the lien must have existed upon the property at the time of the sale under foreclosure. (*Nutt* v. *Cuming,* 155 N. Y. 309, 313.) The lien, however, need not be a legal one; it may be a purely equitable one, and if the holder of such a lien establishes it, he is entitled to share in the surplus, although his lien has not been adjudicated in an action. (*Corporate Investing Co.* v. *Mount Vernon Metal Products Co., Inc.,* 206 App. Div. 273; *Crombie* v. *Rosenstock,* 19 Abb. N. C. 312, 316; *Bergen* v. *Carman,* 79 N. Y. 146, 151.) Some of the earlier cases holding otherwise (*King* v. *West,* 10 How. Pr. 333; *Husted* v. *Dakin,* 17

Abb. Pr. 137, and others reviewed and commented on in Thomas Mort. [3d ed.] § 1102 *et seq.*) are not to be followed. The present rule, as stated above, is in harmony with another rule that the relative rights of subsequent lienors to share in surplus are determined upon equitable principles. (*Burchell* v. *Osborne*, 119 N. Y. 486, 491.) But the court guided by equitable rules in its determination of the priorities of the claims does not proceed arbitrarily, nor with disregard of legal principles. (*Crocker* v. *Lewis*, 144 N. Y. 140, 142.)

A vendee who has made a down-payment has an equitable lien on the property for the amount paid although he has not been let into possession. (*Elterman* v. *Hyman*, 192 N. Y. 113; *Davis* v. *Rosenzweig Realty Co.*, Id. 128.) But he has no lien for the expense of examining the title unless made so by the terms of the contract. (*Occidental Realty Co.* v. *Palmer*, 117 App. Div. 505, 510; affd., 192 N. Y. 588.) In the instant case the contract contains a provision making the reasonable cost of examining the title a lien upon the property. As the failure to take title was not the fault of LeVyne, it seems clear that he had a lien on the land for the amount of his down-payment, and the reasonable cost of his attorney and search fees, which, from the record, would seem to be $160. And this equitable lien passed to the surplus and was not lost when he became the purchaser of the premises at the foreclosure sale. (*Crombie* v. *Rosenstock*, 19 Abb. N. C. 312, 315, 316.)

There seems to be no basis, however, for holding that LeVyne is entitled to any other portion of the fund. He had no lien on the land except to the extent mentioned, and his interest in the fund can be no greater than that lien. While the vendee of a contract for the purchase of real estate is called the equitable owner of the premises (*Williams* v. *Haddock*, 145 N. Y. 144, 150; *Epstein* v. *Gluckin*, 233 id. 490; *Polisiuk* v. *Mayers*, 205 App. Div. 573) he does not have title to the property but only a right to specific performance, and his equitable lien upon it, in the absence of an agreement otherwise providing, is limited to the amount that he has paid upon the purchase price. (*Elterman* v. *Hyman*, 192 N. Y. 113, 120–125; *Holden* v. *Efficient Craftsman Corp.*, 234 id. 437, 440.) The Court of Appeals has recently held that a vendee is not entitled to moneys received by a vendor under a fire insurance policy for a loss occasioned after the making of the contract and before the closing of title, but that, in the absence of an agreement to the contrary, such moneys belong to the vendor. (*Brownell* v. *Board of Education*, 239 N. Y. 369.) The court (at p. 373) quotes from a New Jersey case, which held otherwise, **on**

the theory that the vendee was the equitable owner of the property and that in equity the property was regarded as belonging to him, the vendor merely retaining the legal title as trustee. Commenting upon that opinion, the court said (p. 374): " These reasons may savor of layman's ideas of equity, but they are not law."

Prior to the foreclosure sale LeVyne might have maintained an action for specific performance against the adult owners and obtained their interests in the property with an abatement from the purchase price. (*Bostwick* v. *Beach*, 103 N. Y. 414, 422; *Feldman* v. *Lisansky*, 239 id. 81.) He might also have sued for damages and recovered at least the down-payment and his expenses and additional damages if he proved bad faith on the part of the vendors. (*Northridge* v. *Moore*, 118 N. Y. 419, 422; *Schwimmer* v. *Roth*, 111 Misc. 654, 656.) But he never brought either of such actions. And the mere existence of the right to maintain such actions did not create any lien, legal or equitable, upon the property. These rights, therefore, could not support a claim to the surplus. (*Albro* v. *Blume*, 5 App. Div. 309, 311.) A contract for the sale of real property is not even an incumbrance upon it, although recorded. (*Washburn* v. *Burnham*, 63 N. Y. 132, 135; *Mandel* v. *Guardian Holding Company, Inc.*, 195 App. Div. 576, 579.)

The case of *Ellis* v. *Salomon* (57 App. Div. 118) is not at variance with the rule above stated that a vendee who merely has a right to recover damages for breach of his contract and who had no lien upon the property cannot obtain the surplus. In that case the rival claimants had stipulated that the referee in the surplus money proceeding might determine their claims as fully as could have been done had a suit been brought for that purpose.

It follows that the surplus should be divided as follows:

Ruth MacDonald and Helen MacDonald should each receive one-quarter of it after deducting the value of their mother's dower right, less the sum of $50 from each share, the portion of the down-payment made by LeVyne which they received. The referee has computed the dower interest of their mother erroneously. He has evidently used the wrong table in making his calculation. That dower right amounts to $425.93. Making the above deductions the share of each of these children would be $513.94.

LeVyne is entitled to the amount of his down-payment and his expenses, making a total of $460.

The balance of the fund, but for certain assignments made of it, would go to Rosanna MacDonald, for her dower right, and to Joseph and Walter MacDonald for their shares. It is admitted that Joseph MacDonald and his wife have assigned their interest in the fund to the extent of much more than that interest to

Rosanna MacDonald. She is, therefore, entitled to whatever otherwise would have gone to Joseph. There is also proof showing that Walter MacDonald assigned his interest to Rosanna MacDonald to the extent of $463.35, and interest from July 15, 1922. Although there is some claim in the record that this assignment was not made, I find that it was made and is valid, and as the share that otherwise would have gone to Walter is less than the amount covered by his assignment, the whole of his share should be paid to Rosanna MacDonald. It follows, therefore, that after paying Ruth and Helen and LeVyne as above provided, the balance of the fund should be paid to Rosanna.

Each of the payments should have added to it a proportionate part of the interest earned upon the money since it was deposited with the city chamberlain.

The motion to confirm the report is denied, and an order (settled upon notice) should be submitted in accordance with this decision and providing for the payment of the costs of the proceeding.