Wells Fargo Bank, N.A. v Breuer (2022 NY Slip Op 02037)





Wells Fargo Bank, N.A. v Breuer


2022 NY Slip Op 02037


Decided on March 23, 2022


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 23, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

COLLEEN D. DUFFY, J.P.
CHERYL E. CHAMBERS
SHERI S. ROMAN
LINDA CHRISTOPHER, JJ.


2019-11978
 (Index No. 130084/14)

[*1]Wells Fargo Bank, N.A., plaintiff, 
v
Barbara A. Breuer, etc., et al., respondents, et al., defendants; JP Morgan Chase Bank, N.A., nonparty-appellant.


Fein, Such & Crane, LLP, Westbury, NY (Lisa Browne of counsel), for nonparty-appellant.
The Law Offices of Perry Ian Tischler, P.C., Bayside, NY, for respondents.



DECISION & ORDER
In an action to foreclose a mortgage, nonparty JP Morgan Chase Bank, N.A., appeals from an order of the Supreme Court, Richmond County (Desmond A. Green, J.), dated September 18, 2019. The order granted the motion of the defendants Barbara A. Breuer and Charles M. Breuer to confirm a special referee's report ascertaining the amount of surplus funds due to various claimants, in effect, denied the motion of nonparty JP Morgan Chase Bank, N.A., to confirm in part and reject in part the special referee's report and to distribute certain surplus funds to JP Morgan Chase Bank, N.A., and directed distribution of the surplus funds.
ORDERED that the order is reversed, on the law, with costs, the motion of the defendants Barbara A. Breuer and Charles M. Breuer to confirm the special referee's report is denied, the motion of nonparty JP Morgan Chase Bank, N.A., to confirm in part and reject in part the special referee's report and to distribute certain surplus funds to JP Morgan Chase Bank, N.A., is granted, and the matter is remitted to the Supreme Court, Richmond County, for the entry of an order directing the New York City Department of Finance to distribute the remaining surplus funds to JP Morgan Chase Bank, N.A.
On March 23, 2006, the defendants Charles M. Breuer and Barbara A. Breuer (hereinafter together the Breuers) entered into a home equity credit line agreement (hereinafter the credit line agreement) with the defendant Bank of New York, secured by a mortgage on certain real property on Staten Island. The credit line agreement and mortgage provided, among other things, that during a 10-year "draw period," the Breuers could obtain loans on their account, that the Breuers were obligated to make a minimum payment in each month that a balance was outstanding on their account, and that after the draw period ended, the Breuers were obligated to pay off what they owed over a period of 20 years, by March 23, 2036. The mortgage further stated that if any amount owing under the credit line agreement was not paid when due, the lender "may require that [the Breuers] pay immediately the entire amount then remaining unpaid under the [credit line agreement] and under this Mortgage." Nonparty JP Morgan Chase Bank, N.A. (hereinafter JP Morgan), contends that it acquired the Bank of New York's interest in the credit line agreement and mortgage on April 7, 2006. It is undisputed that the Breuers defaulted in their payments under the credit line agreement [*2]by failing to make the payment due in June 2010, and each payment due thereafter.
The Supreme Court issued a judgment of foreclosure and sale dated September 30, 2016, in favor of the plaintiff, Wells Fargo Bank, N.A., and against the Breuers. The judgment of foreclosure and sale, among other things, directed the sale of the subject property. Following the sale of the premises, the referee reported a surplus of $45,068.93.
On March 30, 2018, JP Morgan filed a notice of claim to the surplus money, by virtue of the mortgage dated March 23, 2006. The Breuers, as owners of the equity of redemption, filed a notice of claim to the surplus money on or about June 11, 2018. In an order dated January 15, 2019, the Supreme Court referred the matter to a special referee to ascertain and report the amount due to various claimants. A hearing was held on February 19, 2019, at which JP Morgan offered witness testimony and documentary evidence intended to show the existence of the credit line agreement, the existence of the mortgage securing the debt, the transfer of the credit line agreement and mortgage to JP Morgan, the Breuers' default in repayment, and an outstanding balance due in excess of $240,000. At the conclusion of the hearing, the Breuers and JP Morgan each submitted a memorandum of law in support of their respective claims to the surplus money. The Breuers contended that JP Morgan's claim was barred by the statute of limitations set forth in CPLR 213(4) because JP Morgan failed to seek foreclosure within six years after the Breuers ceased making payments in 2010, and that JP Morgan failed to demonstrate that it was the holder of the credit line agreement and therefore lacked standing to enforce it.
In a report and recommendation dated June 20, 2019, the special referee found that JP Morgan "established its entitlement to a share of the surplus based upon its status as a junior mortgagee by producing the mortgage documents," but that JP Morgan's "claim to the surplus money is time-barred under CPLR 213(4)." The special referee further concluded that the defendant New York City Environmental Control Board was entitled to $1,489.71 of the surplus money for the payment of docketed judgments.
JP Morgan moved to confirm the special referee's report in part and reject it in part, and to distribute the surplus money to JP Morgan. The Breuers moved to confirm the report.
In an order dated September 18, 2019, the Supreme Court granted the Breuers' motion, in effect, denied JP Morgan's motion, confirmed the referee's report, and directed that $1,489.71 be paid to the defendant New York City Environmental Control Board and the remainder of the surplus be paid to the Breuers' attorney. JP Morgan appeals.
"'[S]urplus money proceedings . . . are not collateral to the foreclosure, but are in the action itself[,] [a]nd the rights of lienors subsequent to the mortgage under foreclosure are before the court and must be protected as much as those of the owner of the property'" (NYCTL 1997-1 Trust v Stell, 184 AD3d 9, 14, quoting Davidson v MacDonald, 124 Misc 726, 728 [Sup Ct, Kings County], affd 216 App Div 759; see Livingston v Mildrum, 19 NY 440, 442). "Surplus money from a foreclosure sale is not a general asset of the owner of the equity of redemption, but stands in the place of the property for the purpose of distribution among those having vested interests in or liens on the property. The rights of the parties are fixed at the time of the foreclosure sale, and the rights of a second lienholder are transferred to any surplus" (NYCTL 1997-1 Trust v Stell, 184 AD3d at 14 [citations omitted]). "[U]pon the foreclosure of the first mortgage, the lien of the second mortgage follow[s] the surplus into the hands of the [municipality's] financial officer, and the remedy of the second mortgagee is to enforce his or her claim in the court by whose direction the foreclosure had taken place" (id. at 15).
Here, the special referee erred in determining that JP Morgan's claim to the surplus funds was barred by the applicable statute of limitations (see id. at 17-18). A party asserting a statute of limitations defense bears the initial burden of demonstrating prima facie that an action was untimely (see Wells Fargo Bank National Association v Kehres, 199 AD3d 869; U.S. Bank Trust., N.A. v Mohammed, 197 AD3d 1205; 21st Mtge. Corp. v Balliraj, 177 AD3d 687, 689). An action to foreclose a mortgage is subject to a six-year statute of limitations (see CPLR 213[4]). Where, as [*3]here, a mortgage is payable in installments, "separate causes of action accrued for each installment that is not paid, and the statute of limitations begins to run, on the date each installment becomes due" (Wells Fargo Bank, N.A. v Burke, 94 AD3d 980, 982). "[O]nce the entire amount of the debt becomes due, either by virtue of the terms of the mortgage or due to an acceleration of the debt, the statute of limitations begins to run on the entire debt" (Fulton Holding Group, LLC v Lindoff, 165 AD3d 1049, 1052; see Plaia v Safonte, 45 AD3d 747, 748). Where, as here, "the acceleration of the maturity of a mortgage debt on default is made optional with the holder of the note and mortgage, some affirmative action must be taken evidencing the holder's election to take advantage of the accelerating provision, and until such action has been taken the provision has no operation" (Wells Fargo Bank, N.A. v Burke, 94 AD3d at 982-983).
Contrary to the special referee's determination, the Breuers failed to demonstrate, prima facie, that the statute of limitations began to run on JP Morgan's entire claim at the time of the Breuers' initial default in 2010. A letter introduced into evidence during the hearing, in which JP Morgan informed the Breuers of its intent to accelerate the maturity of the loan and to commence foreclosure proceedings if the Breuers' default was not cured, was not sufficient to accelerate the debt, because it did not reflect a "clear and unequivocal" election to accelerate (Sarva v Chakravorty, 34 AD3d 438, 439), but rather, merely "discuss[ed] acceleration as a possible future event" (21st Mtge. Corp. v Adames, 153 AD3d 474, 475; see HSBC Bank USA, N.A. v King, 193 AD3d 694, 695).
Accordingly, since the Breuers failed to establish, prima facie, that the statute of limitations on JP Morgan's claim had expired, the burden never shifted to JP Morgan to establish that its claim was timely commenced before the expiration of the statute of limitations (cf. 21st Mtge. Corp. v Balliraj, 177 AD3d at 688-689; HSBC Bank USA, N.A. v Gold, 171 AD3d 1029, 1030; Barry v Cadman Towers, Inc., 136 AD3d 951, 952). Therefore, JP Morgan was not required to demonstrate that it had appeared and participated in the action to foreclose the primary mortgage, in order to avoid the dismissal of its surplus money claim as time-barred (cf. NYCTL 1997-1 Trust v Stell, 184 AD3d at 15; Bennardo v Del Monte Caterers, Inc., 27 AD3d 503, 505; Greenpoint Sav. Bank v Kijik, 297 AD2d 359, 360). Moreover, the applicable statute which governs proceedings to recover surplus funds from a foreclosure sale, RPAPL 1361, did not require JP Morgan to appear in the action to foreclose the primary mortgage prior to the entry of the judgment of foreclosure and sale, in order to preserve its claim to surplus funds (see RPAPL 1361[1]-[3]; Federal Home Loan Mtge. Corp. v Grant, 224 AD2d 656, 656).
The Breuers' contention, as an alternative ground for affirmance, that JP Morgan lacked standing to enforce the credit line agreement, is not properly before this Court, as the Breuers moved to confirm the special referee's report in its entirety without raising any objection to the special referee's finding that JP Morgan had demonstrated its status as a junior lienholder (see Parochial Bus Sys. v Board of Educ. of City of N.Y., 60 NY2d 539, 545-546).
DUFFY, J.P., CHAMBERS, ROMAN and CHRISTOPHER, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court